### LAY v. MIDLAND FARMS CO. et al.
### (No. 2156.)

Court of Civil Appeals of Texas. El Paso.
June 7, 1928.

Rehearing Denied June 28, 1928.

1. **Principal and agent $\Longleftrightarrow$124(3), 174—No issue of fact was made in purchaser's suit to rescind contract on ground of misrepresentations of vendor's agent, where evidence failed to show representations were authorized or ratified.**

In purchaser's action to rescind contract for sale of farm lands on ground of misrepresentations of vendor's agent and vendor's failure to furnish abstract showing marketable title, and to recover value of improvements, no issue of fact was raised for jury's consideration where evidence showed that vendor's contract with agent provided abstract should not be furnished and vendor should not be bound by agent's representations, and no ratification of representations was shown, and purchaser in his application assured vendor that no representations were made.

2. **Principal and agent $\Longleftrightarrow$148(2)—Vendor may restrict his liability for agent's representations by contract provisions.**

Vendor may place limitations on agent's authority by providing that it will not be bound by the representations or statements of agent concerning the land not contained in or authorized by contract.

3. **Principal and agent $\Longleftrightarrow$115(2)—Agent with restricted power to sell may not bind principal by representations as to quality of land sold.**

Agent with restricted power to sell land has no power to bind principal by any representations as to the quality of the land, especially where the purchaser assures the principal in his written application, or in his contract, that he has examined the land and that no representations have been made by agent.

4. **Estoppel $\Longleftrightarrow$83(5)—Purchaser representing to vendor in application and contract to purchase land that he was not relying on agent's representations held estopped to seek cancellation on ground of agent's mispresentations not ratified by vendor.**

Purchaser of land, who represented to vendor in his written application and contract to purchase that he had examined the land and that he was not relying on representations made by the vendor's agent, was estopped to seek cancellation of sale or recovery for improvements on ground of agent's misrepresentations, where it was not shown that principal knew of the representations or ratified them.

5. **Vendor and purchaser $\Longleftrightarrow$114—Purchaser retaining possession of land and securing extension for payments, with knowledge of misrepresentations claimed, waived right to rescind contract for fraud.**

Purchaser who, after discovering alleged misrepresentations of vendor's agents concerning quality and development of community, retained possession and use of land and asked for an extension under the contract, as matter of law waived right to rescind contract for fraud.

6. **Fraud $\Longleftrightarrow$25—Vendor and purchaser $\Longleftrightarrow$37 (1)—Showing of damages is essential to rescind sale or recover damages for fraud.**

To maintain action for rescission of sale or to recover damages, showing of damages is essential.

7. **Fraud $\Longleftrightarrow$25—Vendor and purchaser $\Longleftrightarrow$37 (1)—Purchaser who failed to show that misrepresentations of vendor's agent and failure to perform promises decreased value of land could not rescind or recover damages.**

Purchaser suing for rescission on ground of misrepresentations of vendor's agent and failure to perform promises was not entitled to rescind or recover damages, where he failed to show that the lands were of a less market or intrinsic value by reason of the falsity of the representations, or the failure to carry out the promises, or that the representations or promises constituted any part of the consideration.

Appeal from District Court, Dawson County; Gordon B. McGuire, Judge.

Suit by W. L. Lay against the Midland Farms Company and another. Judgment for defendants, and plaintiff appeals. Affirmed.

F. D. Brown and Lockhart & Garrard, all of Lubbock, for appellant.

Whitaker & Peticolas, of El Paso, and Garland & Yonge, of Lamesa, for appellees.

WALTHALL, J. W. J. Lay, plaintiff below, brought this suit in the district court of Dawson county against the Midland Farms Company, a Texas Corporation, and the C-Ranch Cotton Lands Company, a Texas corporation, defendants below, to rescind a contract for the sale and purchase of lands in Andrews county, and for judgment in the sum of $3,279.23, and interest thereon and costs of suit. In

---

$\Longleftrightarrow$For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the statement of the nature and result of the suit we will designate the parties as plaintiff and defendant, as they are so referred to in the briefs.

Plaintiff alleged, in substance: That on the 1st day of September, 1924, defendants owned large tracts of land in Andrews county, Tex., including, among others, 323.19 acres, the land involved here and described in the petition, and that for the purpose of selling said lands defendants advertised said lands for sale, the advertisements showing fields of growing cotton, bales of cotton, and other advertising matter with respect to said lands then offered for sale. That at that time he resided in Scurry county, Tex., read the advertisements of the lands, and went to Dawson and Andrews counties for the purpose of inspecting said lands, and that after arriving there the defendants, their officers, agents, and representatives made certain representations to him for the purpose of inducing him to purchase some of said lands. That defendants represented to him that the lands they desired to sell were situated in and around the town of Faskin, a station on the Midland & Northwestern Railway Company's line of railway between Midland, Tex., and Seminole, Tex.; that defendants represented to him that said railroad was not then in operation but would be within a short time, and exhibited to him a map showing the location of said lands with reference to said railroad and the town of Faskin, and showing on said map lands marked by the letter S, meaning that each quarter section for two or three miles around said town of Faskin had been sold to actual settlers who would move upon and improve said lands, and that on account of said sales so made by defendants there would soon be a thickly settled and highly developed community in and around the town of Faskin. That the literature furnished to plaintiff by defendants with reference to the sale of said lands contained the provision, and the defendants, their agents, and representatives so represented for the year 1925:

"We agree to have provided all the necessary schoolhouses and cotton gins that will be required to take care of our purchasers' needs."

That after said representations were so made he went upon said lands for the purpose of inspecting same, and, thereafter, on the 25th of September, 1924, entered into contracts with defendants, Midland Farms Company and C-Ranch Cotton Lands Company, to purchase certain of said lands, describing same, and the terms of payment, that is, $1,-675.95 cash, on or before January 1, 1925, and the balance to be paid in ten equal annual payments; that defendant C-Ranch Cotton Lands Company, for itself and for its codefendant Midland Farms Company, promised and agreed to furnish to plaintiff within 30 days from date of contract a complete abstract of title to said land purchased, showing a good and marketable title in Midland Farms Company, free of liens or incumbrances. Plaintiff alleges that he made the said cash payments as he agreed. He alleges that defendants represented that said lands were red sandy land with clay subsoil at a depth of 3½ feet, the very best for growing cotton, corn, milo maize, etc. He alleges that in March, 1925, he moved upon said land and made improvements thereon, specifying same and the cost of the several items of improvements, aggregating the sum of $3,279.23, including the said cash payment. Plaintiff alleged that he believed and relied upon said representations; that they were false and fraudulent and made for the purpose of inducing him and they did induce him to purchase said land; that had he known that said representations were untrue he would not have purchased said lands and made said cash payments, and would not have made said improvements thereon. He alleges the failure of defendants to furnish to him an abstract showing a good and marketable title to said land; that the abstract defendants did furnish showed a suit filed by W. J. Moran against said lands in which he claimed an indebtedness against defendant Midland Farms Company and a lien against said land to the amount of $75,000; that defendants failed to provide the necessary schoolhouse and cotton gin; that after he moved on said land defendants continued to make said representations and promised to carry out and perform their part of the agreement until about the 1st day of July, 1926, when defendants refused to erect the cotton gin in said community as agreed. Plaintiff alleges that he offered defendants and now offers to return to defendants said lands, and that he is entitled to a return to him of his purchase money paid and the money expended by him in improving said land, and a rescission of said contracts of purchase of said land, and tenders into court said contracts for the purchase of said land for the purpose of having same canceled, and offers to pay rent for the use of said land and to do equity as the court might determine. He prays for a rescission of said contract of purchase of said land; for judgment for the said sum of $3,279.23 with interest and costs of suit.

The defendant Midland Farms Company filed its plea of misjoinder of parties and causes of action, and, subject to said plea, answered by general demurrer, special exceptions, general denial, and special answer, in effect: That in March, 1924, it entered into a contract with its codefendant, the C-Ranch Cotton Lands Company, whereby that company agreed to find purchasers for this defendant's lands, and to submit written applications of said purchasers for the purchase of such land, stating the purchase price at which the land might be sold by said com-

pany, the commissions to be paid to said company, the terms of sale, and, specifically, that this defendant was not to furnish any abstracts of title to the purchasers,. but would leave with the Midland National Bank such abstracts as it had, subject to inspection by purchasers or their attorneys, but not to be withdrawn therefrom. That said contract further provided that this defendant should not be bound by any representation or statement of fact on the part of the C-Ranch Cotton Lands Company not contained or authorized in such contract, and that no verbal agreements affecting this contract, or any matter covered thereby, have been made. That said contract was executed by this defendant and the C-Ranch Cotton Lands Company, and that J. B. Birge and M. C. Lindsey guaranteed in writing the performance by the C-Ranch Cotton Lands Company of all the terms and agreements of said contract. That plaintiff made an application in writing to purchase the land involved here, wherein he covenanted and agreed as follows:

"The applicant represents that he has examined said land for himself and is not relying upon any representations made to him by any one in regard to the same, or any promise held out to him on behalf of the seller by any one, not contained in this contract, and it is understood that no officer, agent, or representative of the seller is authorized to make any representations not contained in said contract, or to waive any of its provisions."

That in connection with said application plaintiff signed a duplicate contract covering the purchase of said land which provided that:

"The buyer represents to the seller that he has examined said land for himself and is not relying upon any representations made to him by any one in regard to the same, or any promise held out to him on behalf of the seller by any one, not contained in this contract, and it is understood that no officer, agent or other representative of the seller is authorized to make any representations not contained in this contract, or to waive any of its provisions."

Defendant Midland Farms Company alleged that it had in no way made any representations of any sort to plaintiff with reference to said land, and especially denies that it has made any representations on the subjects alleged in plaintiff's petition.

Defendant Midland Farms Company pleads the provisions of the said application for the purchase of the land, and that plaintiff is estopped to recover anything against it. Defendant, Midland Farms Comany, further pleaded the provisions of its contract with the C-Ranch Cotton Lands Company, and alleged that none of the representations alleged by plaintiff is contained therein, and that by reason thereof any representations made by it would not be binding upon this defendant nor give rise to any cause of action against it.

Defendant further alleged that the C-Ranch Cotton Land Company by reason of its said contract with this defendant was an independent contractor in that it contracted to effect the sale of the land by means entirely its own, and that this defendant had no control over same. Defendant Midland Farms Company further alleged that, long after the time of the alleged false representations the conditions with reference to the abstract of title, and the operation of the Midland & Northwestern Railway, and erection of the schoolhouse, and the nonerection of the cotton gin were known to plaintiff, and after plaintiff had learned all of the said conditions, and the condition of the title, and the things alleged as having induced him to purchase said land, plaintiff affirmed said contract of purchase and continued to occupy, use, and cultivate same, and applied to this defendant and obtained an extension of time for the payment of the deferred payments on the purchase of said land.

Defendant Midland Farms Company further alleged that it did not execute any contract to furnish abstracts to plaintiff on said land, nor did it make any representations as to the kind or class of said lands, nor make any promises to be performed by it as inducement to the sale of said land, nor did it authorize any one else to do so on its behalf.

Defendant Midland Farms Company at great length pleads the matter concerning the W. J. Moran suit, which for brevity we omit, except as to a few brief statements of some of the facts: W. J. Moran filed a suit alleging that he had a lien against the C-Ranch, including plaintiff's land, and asked a foreclosure of the lien. The suit showed on its face that it was long since barred by the statute of limitation. It was filed after plaintiff's purchase and could in no way be effective against plaintiff. Plaintiff was at once advised of the suit and assured that same would be disposed of with diligence and without expense to plaintiff, and to which plaintiff at divers times agreed and expressed himself as satisfied. The case was brought to trial, and in the district court and in the Court of Civil Appeals, both courts holding that on the face of the petition the cause was barred. That plaintiff was at no time disturbed in his possession. That Moran released any right, title, claim, or interest he might have in any of the C-Ranch lands, including plaintiff's land. That after the filing of the Moran suit, as further security to plaintiff against loss, this defendant filed in the district court, where the suit was pending, and with the permission and under the order of the court, and approved by the court, a bond in the sum of $150,000, double the amount of Moran's claim, to be paid in satis-

faction of any judgment that might be rendered in the Moran suit. It was further alleged that in addition to any other security the said C-Ranch, exclusive of the plaintiff's land, or the lands sold to any one else, consisted of about 225,000 acres with a market value many times the amount of the Moran claim.

Defendant Midland Farms Company further alleges that the said obligation of the C-Ranch Cotton Lands Company were guaranteed in writing by J. B. Birge and M. C. Lindsey, and that if in fact any false representations were made by said defendant and it should be found that plaintiff should recover against this defendant, in that event this defendant would be entitled to recover over against the C-Ranch Cotton Lands Company and against J. B. Birge and M. C. Lindsey.

Defendant Midland Farms Company prays that it go hence without day, recover of plaintiff its cost; that said Birge and Lindsey be made parties in the suit; and that it recover over against its said codefendants all such sums as in any event may be rendered against it in favor of plaintiff. This defendant's answer was duly verified.

Defendants C-Ranch Cotton Lands Company, J. B. Birge, and M. C. Lindsey answered to plaintiff's cause of action and Midland Farms Company's cross-action by general demurrer and general denial.

Plaintiff filed his supplemental petition in answer by general demurrer and general denial.

The case was tried to a jury, and when all parties rested, plaintiff tendered and requested the submission of some 28 special issues to be submitted to the jury, which the court refused, and instructed a verdict in favor of all defendants, and so entered judgment.

## Opinion.

Appellant presents four propositions. Without stating the verbiage of the several propositions, they submit that the suit to rescind the contract for the purchase of the land is based upon the alleged representations made to appellant which induced him to enter into the contract; that the representations were false and fraudulent; and that sufficient evidence was offered to the trial to show that such representations were made and that they were in fact false and fraudulent, and that the trial court was in error in peremptorily instructing a verdict for appellees. There are no findings of fact in the record. The evidence covers about 100 pages of the record.

There is no controversy, as we conceive it, on the material, controlling facts presented by the record. It is undisputed that Midland Farms Company was the owner of the C-Ranch lands, which included the lands involved in this controversy and all of the lands mentioned in the evidence, some 226,000 acres, which the owner was undertaking to subdivide into small acre tracts and so dispose of them. In order to dispose of said lands as above the Midland Farms Company, which we designate as owner, or seller, prior to the matters involved in this suit; entered into a written contract with the C-Ranch Cotton Lands Company, which we designate as agent, by the terms of which the agent agreed and undertook to find purchasers satisfactory to the owner, at prices and on the terms stated in the written contract. The contract is lengthy, many of its provisions have no applications to the facts in this case, and we will state only such as seem to bear upon the facts here. The proposed purchasers were to submit to the owner through the agent a written application with the required cash payment, the balance of the purchase price to be paid as provided in the contract of sale. This contract (between owner and agent) provides that duplicate contracts of sale were to be made out upon blanks furnished by the owner embodying the terms of the sale, one copy retained by the owner and one retained by the purchaser. The contract between the owner and agent provides that, contemporaneously with the delivery of the duplicate copy of the contract to the purchaser, the owner will deliver to a Midland Bank, designated as escrow bank, a warranty deed, retaining the vendor's lien securing the deferred payments, conveying said land to the purchaser, to be held by the escrow bank and delivered as provided in the contract of sale. The contract further provides that:

The owner "is not to furnish any abstracts of title to the purchasers, but will leave with the Midland National Bank of Midland, Tex., such abstracts as it now has, which abstracts shall be subject to the inspection of the purchasers or their attorneys at any time, but shall not be withdrawn from the possession of the bank."

The contract between the owner and agent further provides:

"First party (owner) shall not be bound by any representation or statement of fact on part of second party (agent) not contained or authorized in this contract."

The above contract was executed on the part of the Midland Farms Company by A. Faskin, attested by Don Davis, secretary, with the seal of the Midland Farms Company affixed, and on the part of C-Ranch Cotton Lands Company, by J. B. Birge, president.

Underneath the above contract and signatures appears the following:

"We, the undersigned, guarantee the performance by the second party of all the terms and agreements of the foregoing contract. [Signed] J. B. Birge, M. C. Lindsey."

Appellant made an application to buy the land in controversy. It is dated September 25, 1924, signed by appellant, and recites the

total purchase price to be $8,079.75, of which amount $1,615.25 in cash is forwarded with the application, and the balance to be paid in ten equal annual payments, "the sale to be made in accordance with all the terms and provisions of the contract of sale," the application forwarded for approval. The application recites:

"The applicant represents that he has examined said land for himself and is not relying upon any representation made to him by any one in regard to the same or any promise held out to him on behalf of the seller by any one not contained in this contract, and it is understood that no officer, agent or other representative of seller is authorized to make any representations not contained in said contract or to waive any of its provisions. This application shall not be deemed to be approved or accepted by the seller until the same and the contract are signed by Andrew Faskin on behalf of the seller."

The application shows to have been duly approved and accepted by appellee Midland Farms Company on January 21, 1925. At the time appellant signed the above application to appellee Midland Farms Company he also signed, on his part, the contract for the purchase. The contract to purchase is of the date of the application; recites that it is executed in duplicate; recites that Midland Farms Company is the seller and appellant is the buyer; states the terms and conditions of the sale, the cash paid, the amount to be paid and times of payment; states that "no abstract of title is to be furnished"; that the contract shall not be valid until approved and signed by Andrew Faskin, acting for the seller; makes the same recitation as in the application that the buyer represents to the seller that he has examined the land for himself and is not relying upon representations made to him by any one in regard to same, or any promise held out to him on behalf of the seller by anyone not contained in this contract; and that it is understood that no officer, agent or other representative of the seller is authorized to make any representations not in this contract, or waive any of its provisions. The duplicate contract is signed by the Midland Farms Company, by A. Faskin, and by appellant, and by two witnesses.

At the time the application to buy and the duplicate contract were executed, the C-Ranch Cotton Lands Company executed and delivered to appellant a receipt for his application and duplicate contract to purchase, describing the land purchased, the cash paid, and the amount of cash to be paid by January 1, 1925; stating that "we agree hereby that the owners, the Midland Farms Company, will approve the said application and duplicate contract and execute same provided the balance of the cash payment is paid," as above; the receipt recites: "We agree to furnish to W. J. Lay a complete abstract of title to said land," showing a merchantable title, free and clear of liens or incumbrances, the abstract to be furnished within 30 days from date. The receipt was signed by the C-Ranch Cotton Lands Company, by M. C. Lindsey, as vice president.

Appellant testified that he never saw Andrew Faskin at any time prior to May, 1925.

The application of appellant and the duplicate contract appear to have been executed by appellant at La Mesa, Tex., and the application approved by the seller on January 1, 1925, at Midland, Tex.

The evidence found in the record verifies the statement in the application and in the duplicate contract that appellant in person went to see the land he selected and purchased, and prior to his application and contract to buy.

Much is found in the record and in the briefs in the matter of the W. J. Moran suits. We need to state only briefly the main facts as to said suits as shown by the record. Moran filed a suit in the district court of Midland county in January, 1925, in which he sought to recover of the Midland Farms Company commissions alleged to have been earned by him in 1913 in the sale of the C-Ranch on behalf of the heirs of Nelson Morris, and sought to revive a deed of trust against said land which had been released by the holders in 1916, and to ingraft an alleged trust upon the same for the amount alleged to be due him by said heirs. The suit was tried in Midland county, and an appeal taken by Moran, and, pending the appeal, under the order and permission of the trial court, a common-law bond in double the amount of the commissions claimed was executed by the Midland Farms Company, and approved by the court; the tenor, condition and purpose of the bond was to insure that the Moran claim would be paid in case he should recover. Moran did not recover in the suit or suits, and executed a release or quitclaim of any claim he had against the lands. It is fully shown and undisputed that appellant suffered no loss or damage by reason of the Moran suit or suits. None was alleged.

It might be further stated that after appellant had become fully conversant with all of the facts and circumstances about which any and all of the representations and promises are alleged to have been made he continued to remain in possession of said land, cultivating it, planting and replanting it, harvesting and selling the crops grown thereon, and sought and obtained an extension on some of the unpaid amounts becoming due of the purchase money.

[1] We have concluded that under the undisputed facts and by reason of the terms and provisions of the instruments in writing referred to above, appellant was not entitled, as a matter of law, to have a rescission of his contract of purchase of said land, and

was not entitled to a judgment for the value of the improvements placed on said land and for which he sues. Appellant does not plead and the evidence does not show that appellee Midland Farms Company, at any time or in any way ratified any of the representations alleged to be false; nor does the evidence show that the Midland Farms Company, or any of its officers, or any one authorized to speak for said appellee, made any of the alleged representations or promises. As we view it, there was no issue of fact to be submitted to the jury, and the court was not in error in instructing a verdict for defendants.

[2] By the written instruments introduced in evidence appellee Midland Farms Company placed a limit upon the authority of its agent or broker to speak for it or to waive or alter any matter contained in the contract of appointment, and in the application to purchase and in the contract to purchase appellant recognizes that appellee has done so and assures appellee, the seller, that no representation such as is pleaded has been made. Such limitations upon its agent's authority as are found in the written appointment of the C-Ranch Cotton Lands Company as the agent or representative of the seller may be given by the terms of the contract itself, and will be effective. Kasch et al. v. Williams et al. (Tex. Civ. App.) 251 S. W. 816, and cases referred to. To the same effect also is San Antonio Life Insurance Co. v. Trammell (Tex. Civ. App.) 188 S. W. 718.

[3] Here, the C-Ranch Cotton Lands Company's agent was limited by the written terms of its appointment to find purchasers for the several tracts of land into which the C-Ranch had been subdivided. The rule seems to be settled that an agent with restricted power to sell has no power to bind the principal by any representation as to the quality of the land (2 C. J. p. 616, par. 251, and note 23), and especially would this be so where the purchaser assures the principal in his written application to purchase, and in his contract to purchase that he has examined the land for himself and that no representations have been made to him by the agent.

[4] We think, also, that in the absence of pleadings and proof of knowledge on the part of the principal or a ratification by the principal, of the alleged representations, the purchaser is estopped from seeking to cancel the sale, and to have judgment for the payments made and improvements placed on the land.

[5] The purchaser has also affirmed the sale by retaining the possession and use of the land, and having an extension of time granted for matured payments of the unpaid purchase money. On that issue appellant testified:

"After seeing all the post holes dug and the land grubbed I continued to hold the land as my own; I had to; I wasn't going off and leave it. I couldn't do otherwise when I just had a contract. I did continue to hold it, and I claimed it as mine; I tried to make crops on it. As to whether I continued to farm the land after I found out its true character, why certainly until I disposed of it. After Mr. Harris carried me over there, I came back to La Mesa that night and stayed at the hotel. After I had seen the land and the rocks around the windmill and gone around there for a hundred or two yards and examined it, I came back to Judge Lindsey's office and willingly signed a contract for this particular tract of land."

On the fact of the extension Andrew Faskin testified:

"I never asked Mr. Lay for any payments. * * * He came in and asked for an extension."

That statement is not controverted so far as we have found in the record.

Under the above state of the case, appellant waived his right as a matter of law to rescind the contract. J. B. Colt Co. v. Head (Tex. Com. App.) 292 S. W. 198, and cases referred to.

[6, 7] We have not found in the record any evidence to the effect that the lands involved in the suit were of any less market value or intrinsic value by reason of the falsity of the representations or promises relied on by appellant in his petition, nor that appellant would have derived any pecuniary benefit from the performance of any of the promises alleged, nor is it made to appear that either the matters, representations, or promises made constituted any part of the consideration mentioned in the contract for the purchase of the land. To maintain an action for a rescission of a sale or a suit for damages a showing of damages is essential. Callaway v. Chrestman (Tex. Civ. App.) 269 S. W. 908; Russell v. Transportation Co., 113 Tex. 441, 251 S. W. 1034, 258 S. W. 462, 51 A. L. R. 1; Moore v. Cross, 87 Tex. 557, 29 S. W. 1051; Starnes v. Motsinger (Tex. Civ. App.) 278 S. W. 496, the opinion by Judge Pelphrey, of this court.

We have concluded from the record before us that the trial court was not in error in instructing the jury in favor of appellees.

The case is affirmed.