**CALLAWAY v. CHRESTMAN.** (No. 6812.)*

(Court of Civil Appeals of Texas. Austin. Jan. 28, 1925. Rehearing Denied March 11, 1925.)

**1. Vendor and purchaser ☞44—Evidence of release of fraudulently concealed lien held improperly excluded.**

In cross-action by purchaser for rescission because of fraudulently. concealed lien, release obtained prior to trial *held* improperly excluded, in view of agreement between vendor and purchaser allowing former reasonable time to remove lien.

**2. Vendor and purchaser ☞44—Evidence of release of fraudulently concealed lien held improperly excluded, where no damage shown.**

In cross-action by purchaser for rescission on ground of concealment by vendor of existence of lien, evidence of release of such lien should have been admitted in evidence to negative injury resulting from existence of the lien.

**3. Vendor and purchaser ☞37(3) — Fraudulently concealed lien not ground for rescission unless damaging, where removed before trial.**

Fraudulent concealment by vendor of existence of lien upon premises is not ground for rescission unless injury results, where it is removed before trial.

**4. Vendor and purchaser ☞37(3)—Fraudulent concealment of lien by vendor not real injury warranting rescission.**

Fraudulent concealment by vendor of existence of lien, while a continuing potential injury, does not entitle purchaser to rescind sale, where purchaser's possession is undisturbed and his rights in no way affected up to the time lien is removed.

**5. Vendor and purchaser ☞44—Evidence held to show no injury resulting from vendor's concealment of lien.**

Evidence *held* to show no injury resulting from vendor's concealment of existence of lien entitling purchaser to rescind.

**6. Vendor and purchaser ☞114—Allowance of reasonable time for removal of lien, waiver of rescission.**

Agreement between vendor and purchaser, allowing former reasonable time in which to remove fraudulently concealed lien, *held* waiver, for such time, of purchaser's right to rescind.

**7. Vendor and purchaser ☞317—Question of lapse of reasonable time for removal of lien held for jury.**

Where vendor and purchaser entered into agreement whereby former was to have reasonable time to remove fraudulently concealed lien, question of lapse of that time *held* for the jury.

Appeal from District Court, Comanche County; J. R. McClellan, Judge.

Suit by Oscar Callaway against Joe Chrestman, in which the defendant filed a cross-action. From a judgment against plaintiff, and in favor of defendant in cross-action, plaintiff appeals. Reversed and remanded.

Callaway & Callaway, of Comanche, for appellant.

G. E. Smith and J. P. Kearby, both of Comanche, for appellee.

McCLENDON, C. J. On October 1, 1921, Oscar Callaway and wife conveyed to Joe Chrestman by general warranty deed a tract of land in Comanche county, containing 457½ acres. The consideration was $11,457, of which $4,057 was recited to be cash and the balance represented by four vendor's lien notes, payable to the order of Oscar Callaway, in amounts and due dates as follows: $1,000, May 1, 1922; $3,400, January 1, 1923; $2,000, January 1, 1924; and $1,000, January 1, 1925—each note giving the holder the right to declare it due upon default in payment of the interest or principal of any of the notes. At the time the deed was ex-

ecuted there were several undischarged liens against portions of the land conveyed, among them a deed of trust lien for $10,000, in favor of the Federal Land Bank of Houston, which covered 640 acres of land, of which 137½ acres were embraced in the deed from Callaway and wife to Chrestman. With the exception of this deed of trust lien, all of these liens were discharged by Callaway prior to the controversy involved in this litigation.

On October 4, 1922, Callaway, appellant herein, brought this suit against Chrestman, appellee herein, upon the four notes described in the deed, and to foreclose the vendor's lien securing them. On October 9, 1922, Chrestman filed an answer and cross-action, in which he prayed for cancellation of the deed and notes, and recovery of the amount paid upon the land, alleging that he had been defrauded by Callaway in the sale, in that Callaway had represented to him that the land was free from lien. In the alternative, he alleged that Callaway had fraudulently concealed from him the existence of this trust deed.

On November 8, 1922, Callaway filed a supplemental petition, in reply to this cross-action, in which he specially excepted to the prayer for rescission, on the ground that there was no allegation of injury which had accrued to Chrestman by reason of the alleged fraudulent representations. Upon the merits of the cross-action he interposed a general denial and specially pleaded that he had informed Chrestman at the time of the sale of the existence of the deed of trust, and had agreed to remove it as to the 137½ acres whenever Chrestman wanted to sell or incumber the land. He further pleaded that about the 14th of July, 1922, Chrestman began making arrangements to secure a loan on the entire 457½ acres, and took up with Callaway the matter of obtaining such loan from the Federal Land Bank; and that in these negotiations Callaway told Chrestman to make application for the loan, have the land appraised, send in the abstracts, and he (plaintiff) would secure release of the 137½ acres so that Chrestman might get full benefit of the loan on the land; that Chrestman agreed to this; that Callaway secured an agreement with the Land Bank in accordance with this understanding, but Chrestman never sent in the abstracts; and that Callaway procured this release and had it placed of record. There were further pleadings to the effect that the land had been materially damaged while held by defendant, and that rescission would therefore be inequitable.

Chrestman by supplemental answer filed November 8, 1922, replied to this petition by general denial and special pleas. He alleged that he was not apprised of the existence of the lien until about August 1, 1922; that he then promptly notified Callaway thereof and demanded that he clear the title of the lien; that negotiations were thereupon entered into between Callaway and Chrestman for removal of the incumbrance with the distinct understanding that Chrestman was not and would not waive any of his rights to rescind the contract; that these negotiations were continued until about September 15, 1922, at which time Callaway having failed to remove the incumbrance, Chrestman notified him that negotiations were off. It was further alleged that if Callaway had procured the release as alleged by him, it was after suit was filed and after Chrestman's right of rescission had been exercised. By way of injury he alleged that but for the existence of this lien he could and would have procured a loan on the land and liquidated the indebtedness sued upon. It was further pleaded that it would be inequitable to permit Callaway to declare the unmatured notes due, since he was in default in not removing the incumbrance.

We have not attempted to set out in detail the pleadings, but merely give the substance of the allegations in so far as essential to a clear presentation of the controlling questions upon this appeal. The pleadings were sufficient, we think, to properly present and raise these questions.

Upon the trial Callaway offered in evidence a release of the 137½ acres from the Federal Bank trust deed, executed on October 17, 1922, and recorded in Comanche county deed records. Chrestman objected to the admission of this deed, the ground of objection not being stated in the record; and this objection was sustained. Exception to this ruling properly preserved by bill of exceptions was made by Callaway, and the ruling assigned as error.

The case was tried to a jury upon special issues. The answers of the jury find, in substance, the following:

(1) That plaintiff did not represent to defendant that he had good title to the land, and that it was clear and free from lien, and that there was nothing against it.

(4) That plaintiff fraudulently concealed from defendant the fact that there was a lien against part of the land.

(5) That after defendant discovered the existence of the Federal Bank lien, he did not in any way or by any means agree with plaintiff to waive the fraud and give plaintiff a reasonable time to remove the lien.

(8) That the land had not been so used by defendant that it was then in such condition as to render rescission inequitable.

(9) That the reasonable rental value of the land during defendant's occupancy was $457.50.

(10) That plaintiff did not explain to defendant when he sold him the land that it

was part of a larger tract incumbered by a $10,000 lien held by the Federal Bank.

(11) That defendant did not know of the $10,000 lien when he made application to the Federal Bank for a loan.

(12) That defendant would not have purchased the land had he known of the existence of the Federal Bank loan.

(13) That the land was not in as good condition on October 7, 1922, as when plaintiff went into possession.

(14) That it lacked $100 in value of being in such condition.

Upon these answers judgment was awarded denying to Callaway recovery on the notes; canceling the deed and notes; revesting Callaway with title to the land; awarding Chrestman the amount he had paid thereon, less the credits found by the jury; and foreclosing a lien on the land in favor of Chrestman for the net amount of his recovery against Callaway. The appeal is from this judgment.

[1-3] We have reached the conclusion that the trial court committed reversible error in not admitting in evidence the release from the Land Bank lien. We think the evidence conclusively shows that after defendant discovered the existence of the Land Bank lien he entered into negotiations with the plaintiff for its removal, and thereby, in effect, agreed that plaintiff should have a reasonable time in which to remove the lien; and it was in any event a question of fact for the jury whether the plaintiff had complied with this agreement. In the second place, we think it was essential to defendant's right of rescission, if in fact the lien was removed before the trial of the case, that the defendant should show detriment or damage which he suffered by reason of the existence of the lien, and that the evidence negatives any showing of such injury or detriment.

Defendant's cross-action seeking a rescission of the sale was an action of deceit, and to maintain it a showing of damage was essential. This is a well-established doctrine in this state, and applies where rescission of the contract is sought as well a where the relief asked is damage occasioned by the fraud.

In the recent case of Russell v. Transportation Co., 113 Tex. 441, 251 S. W. 1034, 258 S. W. 462, the Supreme Court, in an opinion by Mr. Justice Pierson, restated the law upon this subject. A very full review of the authorities, including eminent text-writers, is presented in the opinion, and the rule reannounced that injury is essential to support the action whether the relief prayed be damages or rescission. The case under consideration was one in which the remedy of rescission was sought.

[4] It is the contention of the defendant, and this was evidently the theory upon which the trial court proceeded, that the mere existence of the lien upon the land constituted a detriment which would entitle the defendant upon a showing of fraudulent concealment of its existence to a rescission, and that whenever he exercised that power his rights became fixed, and a subsequent removal of the lien could not affect them.

On the contrary, it is contended by appellant that where the record shows that the existence of the lien has caused no injury or detriment to the purchaser, and it has been removed prior to the trial of the case, the right of rescission is lost.

In other jurisdictions the decisions upon this subject are by no means uniform, and eminent authority for either view might be cited. In this state the question is foreclosed, in our opinion, by the decision in Moore v. Cross, 87 Tex. 557, 29 S. W. 1051. The facts in that case are quite similar, in respect to this question, to those of the case at bar. If there be any material difference in the facts, it is in that there the lien, which was for a much greater amount, covered the entire property conveyed; whereas, here only a part of the land was incumbered, and there had been no negotiations in that case for a removal of the lien before the suit was brought. The effect of the decision in that case is that the removal of the lien after suit and before trial would defeat the right to rescind, if no injury were shown to have accrued by reason of the previous existence of the lien. And this we think is in accord with the better reasoning. The existence of the lien is a continuing potential injury or detriment; but so long as the purchaser's possession is undisturbed, and his rights are in no way affected up to the time the lien is removed, we think there is no substantial or real injury of which he can complain, or for which he should be accorded the right to rescind the sale.

Having reached this conclusion, we will state as briefly as we may the substance of the testimony pertinent to the issue. The testimony was sufficient to support the finding of the jury that the existence of the Federal Bank lien on the 137½ acres was by Callaway fraudulently concealed from Chrestman, and no question is raised upon this issue, although the testimony of Callaway, himself, is emphatic in support of the allegations of his supplemental petition in this regard as set forth above. The evidence of the defendant in his examination in chief is more or less confused and embraces much that has no material bearing upon any issue in the case, at least in so far as presented in this court. Later in the trial he was put upon the stand by the plaintiff and gave a fairly connected account of the transaction from his viewpoint. He testified that on July 19, 1922, he made application to the Federal Land Bank at Houston for a loan of $10,000, $7,500 of which amount was to be

upon the land involved in this suit, and $2,-500 on a tract of land he owned near Sipe Springs. On August 5, 1922, the Land Bank approved this application, but cut down the amount of the loan to $5,000 on the tract in suit and $2,000 on the Sipe Springs property. In the meantime defendant obtained an abstract to the property, which was delivered to him on or shortly after July 20, 1922, which he then delivered to Mr. Kearby, his attorney, for examination. According to defendant's testimony he had no knowledge of the existence of the Federal Bank trust deed until about the time the abstract was delivered to him, when he was informed thereof by the abstracter. There is a great deal of testimony in the record pro and con as to just what transpired in various conversations between plaintiff and defendant with reference to the removal of this lien. The following quotation from defendant's testimony gives the substance of his version of the matter:

"After the abstract came out, I did not take any further steps with reference to getting the loan through; I didn't have any title, and I didn't try to do anything until I had a title. After they advised me that they had accepted my loan for $5,000, I did not make any effort to get that adjusted so that they could make me the loan. I didn't have any title and there was no use to make any effort until I got a title. I don't know just how long I continued my efforts to secure the loan. I turned it over to Mr. Kearby, and he and Mr. Callaway wrangled around there for some time. I never had anything to do with it, except I told Mr. Kearby if he didn't fix it up within a certain length of time I wanted my money back; that I was going to rescind the trade; I thought I had paid out enough money until I got a title."

Defendant remained in possession of the property until October 7, 1922, when he moved off of it with his cattle and other stock. His testimony is that he was advised on August 5th of the approval of a loan for $5,000 on his property, and he never withdrew the application, but refused to send the papers in. He further testified:

"I gave Mr. Callaway a reasonable length of time to fix it up, turned it over to Kearby to see that he fixed up the papers. The matter was left open to him for some time to fix it up. * * * It stood open a good little bit. I would have accepted it if he had paid it off at the beginning; he refused all of the time to fix up the agreement between him and Kearby. * * * I notified Kearby and demanded a settlement, and after I demanded a settlement, I wouldn't have done nothing. I don't know when that was. At any time up until the filing of the suit I would have gone ahead with the deal if he had met the requirements Mr. Kearby asked him to do. Mr. Callaway always refused to do what Mr. Kearby asked him to do. The letter was left there with Mr. Kearby, and Mr. Callaway never did comply with it."

The evidence shows that the $1,000 note which became due May 1, 1922, had been transferred by Callaway to a local bank, and that another note for $4,000 which Chrestman had given Callaway in a sheep deal had also been so transferred. The latter note was not due until July 22, 1922. The bank had been pressing Chrestman for payment of the $1,000 note and later pressed him for payment of the $4,000 note. There is a great deal of testimony about conversations between Chrestman and the bank officials, Chrestman and Callaway, and Callaway and the bank officials in regard to these notes, much of which is conflicting. There is also much testimony with reference to the application for loan by Chrestman to the Land Bank, and conversations involving Chrestman, Callaway, and the local bank officials in regard to the matter. This testimony is also largely conflicting. However, it clearly appears that Callaway did take up these notes from the local bank, giving his own personal note for the amount, there being some arrangement between Callaway and the local bank with regard to the proceeds of the notes when collected. The testimony shows that Chrestman strenuously objected to payment of the $1,000 note at the time it was due, and it is quite clear that his default in payment of the first note was not in any way affected by the existence of the Land Bank lien, since according to his own testimony, supported by the jury's finding, he had no knowledge of the existence of that lien until on or after July 20, 1922, and after he had made formal application to the Land Bank for a loan. There is nothing in the record to intimate that he was prevented from meeting this note by the existence of the lien, or that he could have met it without obtaining a loan on the property through the Land Bank. If he had other means of meeting this payment, or of refunding this debt, the record is entirely silent thereon, and the clear implication from his testimony, an implication which we think is irresistible, is that it was necessary for him to negotiate this loan in order to meet the payment.

As to what transpired between Chrestman's attorney Kearby and Callaway, the record is entirely silent except in so far as testified to by Callaway, as Kearby, who appeared as counsel for Chrestman in the case, did not take the witness stand. According to the testimony of Callaway, the "bone of contention between him and Kearby was whether the former should pay for certain abstracts of the title, which he refused to do. The entire controversy between Callaway and Kearby, so far as the record shows, turned on this issue. Without detailing the testimony of Callaway in regard to the negotiations for obtaining the loan for Chrestman from the Land Bank and the removal of the Land Bank lien, the substance of his testimony was to the effect that he was assisting and advising Chrestman in obtaining

this loan and had arranged for the removal of the lien whenever the loan was made. The president of the local bank testified that he was ready at all times to loan Callaway the money necessary to have this lien released on the 137½ acres, and that he communicated this fact to Chrestman, who denied recollection of the conversation. The effect of Callaway's testimony was that he continuously urged Chrestman to send the abstract and papers to the Land Bank, so that the loan might be passed and completed, and he could never get him to do so, and finally brought the suit. We should state in this connection that the approval by the Land Bank of Chrestman's application for loan to the extent of $5,000 on the land in suit was conditioned upon its constituting a first lien. As to whether Chrestman could have complied with this requirement the record is silent. It is clear that he could not pay off the $7,400 notes with the $5,000 he would get from the Land Bank, and it would be necessary for him to raise $2,400 elsewhere or obtain Callaway's consent to carry that much of the indebtedness as a second lien. The negotiations never seem to have reached the point of Chrestman's obtaining or attempting to obtain this concession from Callaway.

[5] We think the foregoing is a fair statement of the substance of the evidence in so far as it affects the above issues which we think control the case. It is our conclusion that the testimony does not show any injury occasioned to Chrestman up to the trial of the case which would entitle him to a rescission, if, as contended by Callaway and as evidenced by the excluded release, the land had been cleared of the deed of trust lien in favor of the Land Bank prior to the trial. As stated above, the evidence of Chrestman, himself, clearly shows that his default in the payment of the note becoming due May 1, 1922, was not in any way affected by the existence of the lien, as he knew nothing about the lien up to that time and was under the impression that he had a perfect title to the land. From the time, according to his testimony, that he gained his first information of the existence of that lien, there is no evidence whatever that he was in any way damaged by its existence. His refusal and that of his attorney to proceed further in obtaining the loan from the Land Bank necessarily stopped or suspended all negotiations in that regard until the requirements of the Land Bank to forward the papers and abstracts were complied with. It does not appear that the Land Bank ever withdrew its approval of the loan or refused to make it, nor does it appear that the existence of the lien pending negotiations for the loan in any way impeded or affected such negotiations. Callaway testified that he was in position at all times to take up the lien, and was offering to do so whenever the negotiations reached the point where it became necessary; and that he did in fact remove the lien in so far

as the 137½ acres was concerned in pursuance of such negotiations prior to the trial, and prior to the filing of his supplemental answer on November 8, 1922; and he offered in evidence a release of that lien. In this state of the record we think Callaway would have been entitled to an instructed verdict on defendant's cross-action praying for rescission, if the release had been admitted in evidence and its terms not been contradicted. The exclusion of the release was therefore reversible error.

[6, 7] The evidence, as above detailed, also conclusively shows that after Chrestman discovered the existence of the lien, he entered into negotiations with Callaway for its release and gave him a reasonable time within which to procure it. Under these circumstances, even if detriment had been shown, there would have been a waiver on Chrestman's part of his right to rescind until the expiration of such reasonable time. The procurement of the release would constitute a compliance with such agreement and waiver, provided a reasonable time had not elapsed; and under all the circumstances in the case we think it was clearly a question of fact to be determined by the jury whether such reasonable time had so elapsed.

For the error of the court in excluding the evidence of the release of the Land Bank, the judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.

### On Appellee's Motion for Rehearing.

In the "ninth error assigned" in the motion, complaint is made of the underscored words in the following sentence in our original opinion:

"The effect of Callaway's testimony was that he continuously urged Chrestman *and his attorney* to send the abstract and papers to the Land Bank, so that the loan might be passed and completed, and he could never get *them* to do so, and finally brought the suit."

The contention is made that the record does not show any such request was made of Chrestman's attorney. The record is very meager as to what transpired between Chrestman's attorney and Callaway, and it may be that the inference that such request was made to him cannot fairly be drawn therefrom. We can see no importance whatever attaching to this finding, but, since appellee's counsel request elimination of the objectionable words in the sentence quoted, we accordingly do so, and the sentence is hereby corrected to read:

"The effect of Callaway's testimony was that he continuously urged Chrestman to send the abstract and papers to the Land Bank, so that the loan might be passed and completed, and he could never get him to do so, and finally brought the suit."

The motion for rehearing is overruled. Overruled.