E. T. NANCE V. HELEN WHITE MCCLELLAN ET AL.

No. 6446. Decided January 15, 1936.
Rehearing overruled February 12, 1936.
(89 S. W., 2d Series, 774.)

*Wynne & Wynne,* of Wills Point, for plaintiffs in error.

It must be shown that some injury or damage has resulted to the party claimed to be aggrieved before contract can be cancelled or set aside because of false representations. Bauder v. Johnson, 36 S. W. (2d) 1112; Clem v. Fulgham, 14 S. W. (2d) 812; Lay v. Midland Farms, 8 S. W. (2d) 230.

Conversation between witness and third persons not in the presence of the party to the suit against whom the substance of such conservation is sought to be used is not admissible in evidence. Moody & Jamieson v. Gardner, 42 Texas, 411; Tucker v. Hamlin, 60 Texas, 171; Hooss v. Willingham, 35 S. W. (2d) 847.

*Burgess, Chrestman & Brundidge,* and *H. A. Bateman,* all of Dallas, for defendants in error.

MR. JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

■ Application for writ of error was granted on an assignment of error presenting the contention that to this case should be applied the general rule announced by Russell v. Industrial Transportation Company, 113 Texas, 441, 251 S. W., 1034, 258 S. W., 462, 51 A. L. R., 1, that proof of pecuniary loss or damage is essential in a suit to rescind a contract for fraud. We have reached the conclusion, however, that the case, by reason of its peculiar facts, comes within an established and fundamentally sound exception or qualification of that rule. The principle, stated generally, which supports and compels the exception or qualification is that a purchaser of property, whether real or personal, is entitled to the benefit of his bargain and should not be obliged to accept something that he did not buy.

Defendants in error, Mrs. McClellan and Miss Parker, agreed to purchase from plaintiff in error Nance a lot 50x100 feet in dimensions in the town of Grand Saline for the purpose, known to Nance, of constructing a hotel thereon. The jury found that prior to the time the contract of purchase was made Nance represented to Mrs. McClelland and Miss Parker that there was a public street between the lot and the right of way of the Texas & Pacific Railway Company. The trial court found that according to the undisputed evidence there was not a public street in front of the lot and between the lot and the right of way, and that the representations made by Nance were false, and rendered judgment in favor of defendants in error canceling the note, and the deed of trust securing it, executed by them in part payment for the lot, and judgment for the recovery of the purchase money paid and deposited. There were no allegations and no proof that defendants in error suffered any certain amount of pecuniary damages as a result of the fraud. The Court of Civil Appeals affirmed the judgment of the trial court. 54 S. W. (2d) 1109.

The undisputed evidence showed that the north line or front of the lot was along the south line of the right of way owned by the railway company and extending east and west through the town, and that the lot on its other sides was bordered by privately owned property. The width of the right of way south of the railroad track was 200 feet. The

large area covered by the right of way within the town and south of the railroad track was unfenced. On it were situated a stock pen for the shipping of cattle, a platform for shipping cotton, and tanks owned by two oil companies. Shippers went back and forth over the right of way in using the stock pen, cotton platform and oil tanks. A trough for watering teams was maintained at a point approximately half-way between the railroad track and the south line of the right of way. A passageway or roadway, not accurately defined as to location or width but running east and west and near the north line of the lot, had been used by the public for many years. According to the testimony of defendants in error, Nance told them that the public street between the lot and the right of way extended approximately as far north as the watering trough. Defendants in error discovered the railway company's ownership of the entire area as far south as the north line of the lot when they caused an abstract of title to be examined, and they thereupon demanded the return of the money and the notes.

There are many authorities holding that "pecuniary damage is not essential to fraud available as the basis for rescission of a contract." 26 C. J., p. 1183. See also: Williston on Contracts, Sec. 1525; 2 Texas Law Review, 524; 7 Texas Jur., p. 924, Sec. 26. This court, however, is committed by Russell v. Industrial Transportation Co., 113 Texas, 441, 251 S. W., 1034, 258 S. W., 462, 51 A. L. R., 1, to the general rule hereinbefore stated that proof of pecuniary damage must be made in a suit to rescind for fraud as well as in an action for damages. The rule has been repeated and applied in a number of subsequent decisions, among them being: Bryant v. Vaughn (Sup.), 33 S. W. (2d) 729; Lane v. Cunningham (Com. App.), 58 S. W. (2d) 35; Fidelity Mortgage Co. v. Henslee, 43 S. W. (2d) 609; Calloway v. Chrestman, 269 S. W., 908; Baden v. Deragowski, 7 S. W. (2d) 123 (application for writ of error refused).

This rule, however, like most rules, is not to be applied blindly or without any qualification whatever or in such way as to render courts of equity powerless to relieve a purchaser when the seller's fraud has imposed upon him property in real substance or in identity different from that which he contracted to buy.

The opinion in Russell v. Industrial Transportation Company, supra, recognizes that the general rule which it announces is not without qualification when it states that the word damage

should not be restricted to monetary loss and that it is sufficient if the defrauded party has been induced to incur a legal liability or obligation different from that represented or contracted for.

Black's statement of the general rule is:

"As a general rule, a fraud which causes no injury is not legally cognizable; and it is an essential part of the definition of fraud, as a cause for the intervention of equity, or for a party to take steps to rescind a contract or other obligation into which he has entered, that it should have resulted, or that it will result, in some loss, damage, detriment, or injury to him."

He adds, however, that there are certain well-recognized exceptions to the rule, one of these relating to sales of property, which he explains as follows:

"A purchaser of personal property is entitled to receive the identical property bought, and if the vendor, by fraud or trick, palms off on him, or induces him to accept, a substituted article or something not contemplated by his contract, the purchaser may rescind the sale and recover what he has paid, without showing any pecuniary damage, or even though the substituted article is worth full as much as the one intended, for 'the purchaser is entitled to the bargain which he supposed and was led to believe he was getting, and is not to be put off with any other, however good.' *So also as to realty. A person cannot, with intention to mislead a purchaser by deceiving him concerning facts as to which he is in the dark, sell him land for one purpose, and then, in a suit in equity, brought to annul the transaction by reason of such fraud, defend on the ground that, while he knowingly and willfully deceived the purchaser in the manner claimed, the grantee will lose nothing thereby if he will avail himself of the land for some other or different purpose designated by the grantor.*" (Italics ours). Black on Rescission and Cancellation, Vol. 1, Sec. 36, pp. 81, 83-84.

The same qualification of the general rule appears in the text of Ruling Case Law:

"As a general rule to warrant relief on the ground of fraud either at law or in equity the party seeking it must have been damaged, or, as the rule is sometimes stated, he must have been misled to his hurt. It has also been held that a purchaser of either real or personal property is entitled to the benefit of his bargain, by receiving the identical property purchased; and where the vendor, by fraud or false representations, conveys to him or induces him to accept something not contemplated by the contract, he may rescind the sale and recover what he has paid,

without showing that he has sustained any pecuniary injury or damage thereby." 12 R. C. L., pp. 388-390, Sec. 138.

In Stenn v. Weisten, 51 Ore., 473, 94 Pac., 834, the plaintiff agreed to purchase a tract of land with the intention of engaging in the sawmill and lumbering business. The seller falsely represented that the land was covered with fine timber. In affirming a decree for rescission the court said:

"The principal defense relied upon appears to be that the land is of considerable value because of the timber thereon suitable for piling; but we think this insufficient. It was not purchased for that purpose. A person cannot, with intention to mislead a purchaser by deceiving him concerning facts of which he is in the dark, sell him land for one purpose, and then in a suit in equity, brought to annul the transaction by reason of such crafty device, defend on the grounds that, while he knowingly and willfully deceived the purchaser in the manner claimed, the grantee will lose nothing thereby if he will avail himself of the lands for some other or different purpose designated by the grantor. For example, A. could not, by this method, sell to B. placer mining ground, and, in a suit to set aside the sale, admit its worthlessness for the project contemplated, and, as a defense thereto, insist that it would make an excellent brickyard. This 'gold brick' method cannot be sanctioned in a court of equity."

The same ruling was made in a similar case by the Supreme Court of Wisconsin, in Hansen v. Allen, 117 Wis., 61, 93 N. W., 805, where it is said:

"It is claimed that even if the plaintiff was induced to make the contract by such fraud, yet there is a failure on the part of the plaintiff to show that he was actually damaged by reason of such fraud. It is enough to say that the plaintiff was entitled to have the particular piece of timbered land with a stream of water upon it which had been pointed out to him, and for which he actually contracted, instead of a different piece of land situated at some other place."

The foregoing authorities announce two qualifications or exceptions to the general rule that proof of pecuniary damage is essential in a suit to rescind a contract for fraud. One of such exceptions is that proof of such damage is unnecessary in cases where the property received by the buyer is different in physical identity from the property which he contracted to buy or which he was induced by the seller's representations to believe he was buying. The other exception is that proof of pecuniary damage need not be made when the property is, with knowledge on the part of the seller, purchased by the buyer for a particular use

and is fraudulently represented by the seller to be suitable, but in fact is wholly or substantially unfit, for such use. The principle that the buyer is entitled to the benefit of his bargain and should not be obliged to accept what he did not buy supports both exceptions. In the first case, he has received property different in physical identity from what he bought. In the second case, the result of the purchase is in effect the same, for the buyer has received property which is unfit for the particular purpose of its purchase and thus is as useless to him as it would have been had it been different in physical identity. In either case the buyer necessarily has suffered injury.

■ The instant case comes within the second of the two exceptions. The lot conveyed by the deed was the same lot in physical identity as that which defendants in error contracted to buy, but it was, as plaintiff in error knew, purchased as the site for a hotel. If there had been, as represented by plaintiff in error, a public street approximately 100 feet wide in front of the lot, it would have been suitable and useful as a hotel site, but it was surrounded by privately owned property and had no means of ingress and egress, and thus was substantially, and almost wholly, useless for the particular purpose for which it was bought. A court of equity should not deny the right of rescission in a case of this character.

By the recognition of these two exceptions to the rule many apparently conflicting decisions may be reconciled. An interesting and instructive opinion in Jackway v. Proudfit, 76 Neb., 62, 106 N. W., 1039, 109 N. W., 388, 14 Ann. Cas., 258, points out that the conflict is apparent rather than real between the cases holding that the purchaser need not prove damage in order to rescind and those holding that he must prove damage, in that in most of the cases which permit rescission without proof of damage the holding is based on the rule that the purchaser is entitled to have the thing actually purchased, whereas in the cases where the right of rescission is denied because of an absence of proof of damage, the buyer has obtained the thing purchased and seeks to rescind on false representations as to quality, condition or value.

Several decisions of the courts of this State which seem to conflict with Russell v. Industrial Transportation Company, supra, are not in real conflict with the general rule applied in that case, because their facts bring them within one or the other of the two exceptions above discussed. For example, in Kanaman v. Hubbard, 110 Texas, 560, 222 S. W., 151, it was

held that the purchaser of an automobile was entitled to rescission without proof of any definite or substantial amount of pecuniary loss. As appears from the facts stated in the opinion of the Court of Civil Appeals (160 S. W., 304), there was no market or general demand for the particular automobile, and the plaintiff was induced to buy through defendant's false representation that he had a purchaser for the automobile. The seller, knowing that the purchase was being made for the particular purpose of immediate resale, fraudulently caused the purchaser to buy an automobile for which there was no market.

Other illustrative cases are: Montagne v. Monk, 44 S. W. (2d) 451, in which the seller represented that the automobile purchased was a 1928 model, when it was a 1927 model; Powell v. Rocknow, 58 S. W. (2d) 536 (application for writ of error granted on another point), where judgment was rendered rescinding the purchase of a hotel represented by the seller to be a hotel of good reputation, with the best people as patrons, but which, as the opinion of the Court of Civil Appeals states, was, under the plaintiff's testimony, "nothing more than a cheap bootlegging joint and assignation house."

The facts in Bryant v. Vaughn (Sup.), 33 S. W. (2d) 729, suggest that it might have been brought within one of the exceptions which have been discussed, but no such contention was made, and the case was presented as if the alleged false representations related to the quality or value of the land.

On the authorities cited and discussed, and for the reasons which have been stated and quoted, it was unnecessary for defendants in error to make proof of pecuniary damage.

There was no issue to be submitted to the jury as to the truth or falsity of the representations made by plaintiff in error, unless the issue was raised by evidence which showed that the public for many years used as a roadway or passageway a part of the right of way along or near the north line of the lot.

After a careful examination of all of the evidence, we find that the Court of Civil Appeals correctly concluded that "there was no controverted issue of fact as to whether the public had acquired a right to a street in front of the lot by prescription." The statement of facts contains no evidence whatever proving or tending to prove that the city or any member of the public ever asserted a right, adverse or hostile to the title or rights of the railway company, to use the right of way for a roadway or street. On the contrary, all of the facts and circumstances con-

clusively show that the large area south of the railroad track was left open and unfenced by the railway company for the convenience of its patrons and the public generally, and that the public used it promiscuously as "open country" with the owner's permission and not under claim of right. A right cannot be established by prescription unless the use is adverse and under claim of right. "The foundation of prescriptive title is the presumed grant of the party whose rights are adversely affected; but where it appears that the enjoyment has existed by the consent or license of such party, no presumption of grant can be made." Klein v. Gehrung, 25 Texas Supp., 232, 242, 78 Am. Dec., 565. See also: Cunningham v. San Saba County, 1 Texas Civ. App., 480, 20 S. W., 941; Robison v. Whaley Farm Corporation, 120 Texas, 633, 640, 37 S. W. (2d) 714, 40 S. W. (2d) 52; Ladies' Benevolent Society v. Magnolia Cemetery Co. (Com. App.), 288 S. W., 812, 815; Heilbron v. St. Louis Southwestern Ry. Co., 52 Texas Civ. App., 575, 113 S. W., 610; Bryson v. Abney, 171 S. W., 508 (application for writ of error refused); West v. City of Houston, 163 S. W., 679; De George v. Goosby, 33 Texas Civ. App., 187, 76 S. W., 66 (application for writ of error refused); Brundrett v. Tarpley, 50 S. W. (2d) 401; 21 Tex. Jur., Sec. 22, p. 549, Secs. 24, 25, pp. 551-553; 29 C. J., Sec. 9, pp. 377-378.

■ Over objection of plaintiff in error, defendants in error were permitted to testify that McClellan repeated to Miss Parker representations made by plaintiff in error to McClellan as to the existence of a street in front of the lot. The record indicates that this testimony was admitted for the purpose of proving that the representations were communicated to Miss Parker and not as evidence that they were made by plaintiff in error. If, however, the testimony is considered hearsay rather than direct evidence, its admission is not ground for reversal, because it is hardly possible, and certainly not reasonably probable, that it influenced the jury in finding that the representations were made. All of these witnesses testified that they heard plaintiff in error state that there was a street in front of the lot. McClellan and Mrs. McClellan testified that he made the statement to them. Miss Parker and Mrs. McClellan testified that at a later time he told them in the presence of Carmichael that there was a street in front of the lot. The jury evidently found that the representations were made because it believed the direct testimony of these witnesses, and, since it so believed, it may safely be said that its finding would have been the same without

the additional testimony of the same witnesses that one of them repeated the representations in the presence of the other two. The testimony was, under the circumstances, in its effect upon the jury a reiteration by the same witnesses of the direct testimony given by them, and the reiteration thus proven only by the testimony of the same witnesses added neither weight nor credence to their direct testimony. In our opinion it affirmatively appears from the record in the case that plaintiff in error was not prejudiced by the admission of the testimony of which complaint is made. Epting v. Nees, 25 S. W. (2d) 717 (application for writ of error refused); 3 Tex. Jur., Sec. 880, pp. 1257, 1258; 17 Tex. Jur., Sec. 116, pp. 350, 351.

■ The contention of plaintiff in error, first made in the Court of Civil Appeals, that the judgment should be reversed because of the absence of necessary parties, namely, Emma Nance, Charlie Nance and Betty Nance, is without merit, because the record contains no evidence that they were interested in the lot or in the contract for its sale, but on the contrary tends strongly to prove that they had no interest. Plaintiff in error in his answer alleged that he was the owner of the lot and as such owner made the contract for its sale. In his cross-action he further alleged that he was entitled to have delivered to him "his money" and "his notes," which had been deposited in the bank. The installment note was payable to plaintiff in error and the deed of trust given to secure it named him as beneficiary and payee. Plaintiff in error testified that Emma Nance was his second wife and that he bought the lot after the death of his first wife and before he married again. There is no suggestion in the record that plaintiff in error used or intended to use the lot for homestead purposes. The relation, if any, of Charlie Nance and his wife, Betty Nance, to plaintiff in error is not shown. The single circumstance that the deed conveying the lot to defendants in error and deposited in the bank was executed by Emma Nance, Charlie Nance and Betty Nance, as well as by plaintiff in error, does not establish their ownership of interests in the lot. Defendants in error may have requested that they execute the deed out of caution and to exclude the possibility of the assertion of some claim by them.

The burden is upon plaintiff in error to establish the asserted error, the absence of necessary parties in the entry of the decree cancelling the contract, and incidentally the deed. That he fails to do when the record contains no proof that the absent parties were in fact interested in the subject matter of the suit

when the decree was entered. Colquitt v. Gulf Production Co. (Com. App.), 52 S. W. (2d) 235, 238; Frame v. Whittaker, 120 Texas, 53, 60, 36 S. W. (2d) 149; Collier v. Ford, 81 S. W. (2d) 821, 825; Houts v. Scharbauer, 46 Texas Civ. App., 605, 103 S. W., 679; 7 Tex. Jur., Sec. 54, p. 973; 32 Tex. Jur., Sec. 9, pp. 15, 16; Black on Rescission and Cancellation, Vol. 3, Secs. 659, 660, 661, pp. 1580-1583.

The judgments of the trial court and the Court of Civil Appeals are affirmed.

Opinion adopted by the Supreme Court January 15, 1936.

Motion for rehearing overruled February 12, 1936.