**ANDERSON v. HALL et al.**

No. 14033.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 16, 1940.

Rehearing Denied March 15, 1940.

Ernest May and Lloyd Hutcheson, both of Fort Worth, for appellant.

Webb, Bransford & Matthews, of Fort Worth, for appellee B. G. Hall.

J. Elwood Winters, of Fort Worth, for appellee Truman Jones.

BROWN, Justice.

Appellant sued B. G. Hall, Truman Jones and C. H. Anderson in the County Court at Law No. 2 of Tarrant County, alleging that he owned, on or about December 16th, 1937, a certain two door master coach Chevrolet automobile of the value of $300. That defendant Hall was engaged in the business of trading and dealing in used cars in the City of Fort Worth, and the defendant Jones was likewise engaged in such business under some kind of agency or partnership arrangement with Hall. That on the date above given, the defendant C. H. Anderson, acting in behalf of his said co-defendants, proposed to plaintiff that he purchase from or through said Anderson a 1937 Pontiac four door sedan, and trade in his said Chevrolet, at an agreed trade-in allowance of $300.

That the proposal was accepted and plaintiff agreed to pay a balance of $650 in monthly instalments, and that he was induced to part with his Chevrolet and to agree to the transaction, by reason of fraudulent representations made by C. H. Anderson of and concerning the said Pontiac: that he represented that the Pontiac was as good as new; that it had been purchased originally from the authorized Frontier Pontiac dealer in Fort Worth, and was used only as a family car in the said City from the time of its original purchase until the date of the proposed trade; that its original purchase price was $1,295, and that its value had been scarcely affected by its use.

That such representations were relied upon by the plaintiff when he agreed to the trade, but same were false, in that the defendant Hall had purchased the car from a used car dealer in the State of Arkansas, and it had not been operated only as a family car in the City of Fort Worth, but in fact had sustained hard usage prior to the time plaintiff agreed to purchase it;

that it did not originally cost $1,295, but cost $1,095, and that its value had been materially affected by its prior use.

That plaintiff, after these false representations were made to him, executed a bill of sale on his Chevrolet, conveying same to defendant Truman Jones; that upon learning of the false representations made relative to the Pontiac car, plaintiff refused to accept the Pontiac and demanded the return of his Chevrolet, but the defendants have refused to deliver the Chevrolet to him.

By trial amendment, the plaintiff pleaded: That if the defendant Hall was not a partner of the defendant Jones and acquired the Chevrolet automobile by purchase from Jones, that Hall was not an innocent purchaser thereof, but acquired same subject to the rights of the plaintiff.

The defendant Jones answered by certain special exceptions and a general denial. The defendant Hall answered by certain special exceptions, a general denial and specially denied many allegations of plaintiff's petition, and alleged that he purchased plaintiff's automobile from Truman Jones, in the usual course of trade, for a valuable consideration and that he is an innocent purchaser.

Hall then pleaded in cross-action against his co-defendant Jones for whatever sum he, Hall, should be compelled to pay the plaintiff, and alleged certain repairs done on plaintiff's car and asked judgment for such sum.

The cause was tried to a jury. Plaintiff dismissed as to defendant C. H. Anderson, he not having been served with process.

The jury found, in answer to special issues submitted, the following: (1) that C. H. Anderson told plaintiff the list price of the Pontiac car was $1,295; (2) the statement was untrue; (3) that C. H. Anderson knew it was untrue; (4) that the representation was material and (5) plaintiff acted upon the representation; (6) that C. H. Anderson told plaintiff that the Pontiac car had been used only as a family car in Fort Worth; (7) such statement was untrue; (8) that C. H. Anderson knew it was untrue; (9) that such representation was material; (10) that plaintiff relied upon the representation; (11) that on December 16th, 1937, C. H. Anderson was an agent or employee of Truman Jones; (12) that he was acting within the scope of his employment on such date; (13) that C. H. Anderson was an agent or employee of

B. G. Hall on December 16th, 1937; (14) and was acting within the scope of his employment; (15) that the reasonable cash market value of plaintiff's Chevrolet on or about December 17th, 1937, was $300; (16) that plaintiff sold the Chevrolet to Truman Jones; (17) that Jones sold the Chevrolet to Hall; (18) that when Jones sold the Chevrolet to Hall, plaintiff was asserting a claim to it, but (19) that Hall did not know of such asserted claim; (20) that Hall spent $86.35 for labor and materials repairing the Chevrolet car; (21) these repairs were necessary, and (22) were reasonable; (23) that B. G. Hall did not sell the Pontiac automobile to Truman Jones; (24) not answered under instructions as to Issue No. 23; (25) that plaintiff did not rely upon his own inspection of the Pontiac before he agreed to purchase it.

The defendant Hall filed a motion for judgment in his favor notwithstanding the verdict.

The trial court rendered judgment for the defendants Hall and Jones which recites, in substance, that the verdict was received and accepted and the jury discharged, and that Hall and Jones each duly filed a proper motion for judgment non obstante veredicto, upon the ground that there was no pleading on file and no evidence introduced to raise the issues submitted or to sustain the findings of the jury thereon, and on the ground that plaintiff wholly failed to plead, allege or prove that he was injured by the alleged fraud, and that there is no pleading and no evidence to raise and sustain any issue or finding as to any partnership or agency between Hall and the other defendants, that the court finds these contentions are true, and sustains the motion to disregard the jury's findings on special issues 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 and 14.

The plaintiff excepted to the ruling and to the judgment of the court and promptly gave notice of appeal to this Court, and perfected his appeal.

There is no motion for judgment notwithstanding the verdict in behalf of defendant Jones, in the record before us.

The special exceptions and demurrers of the defendants Hall and Jones were not ruled upon by the trial court, and the plaintiff's pleading must stand for what it is worth.

He has pleaded a state of facts which join the salesman C. H. Anderson, and B. G. Hall and Truman Jones in a joint transaction by and through which his Chevrolet car was to be traded in at an agreed price of $300, in part payment on the Pontiac car to be purchased by the plaintiff, and about which Pontiac car the salesman C. H. Anderson made material misrepresentations as to its use, from whom it was purchased, and its original purchase price.

We next review the testimony which went to the jury.

Truman Jones did not appear and testify, and no reason is given for his failure to do so.

Plaintiff testified to the visit made by C. H. Anderson out to his place of business at Rotan, Texas, when he brought the Pontiac out to show it to plaintiff and when he made the representations set out in plaintiff's pleading. Plaintiff testified that after he had the talk with C. H. Anderson, some one sent him a note and mortgage to sign. He produced the papers and introduced them in evidence; they are dated December 17th, 1937, and constitute a note made payable to B. G. Hall in the sum of $650, payable in instalments, and a mortgage with plaintiff as mortgagor and B. G. Hall as mortgagee, conveying the Pontiac that was to be sold to the plaintiff. Plaintiff testified that he did not execute the note and mortgage because he had, in the meantime, learned about the Pontiac car; that he came to Fort Worth with these papers in his pocket; that he could not find Truman Jones and he went to see B. G. Hall and asked him what his name was doing on the papers because he had not heard of Hall before, and Hall answered: "I own all of those cars on Truman Jones' lot; that is the reason my name is on that paper."

Plaintiff testified that he tried to get his Chevrolet back, but Hall told him that Truman Jones had some papers on his car and he (Hall) intended to keep it. That he had talked to C. H. Anderson before he talked to Mr. Hall and Anderson had told him that he could get his car back.

The witness Odell Atwood testified that he knew the plaintiff and B. G. Hall; that in 1937, he knew plaintiff was in the market for a car; that witness went to Mr. Hall and told him about plaintiff as a prospective buyer; that this was in December, 1937, he thought; that he went to see Hall after the plaintiff had wrecked his own car.

The bill of sale from plaintiff to Truman Jones, conveying the Chevrolet, is dated

December 17th, 1937; the bill of sale to said car from Jones to B. G. Hall is dated December 20th, 1937.

B. G. Hall testified that in December, 1937, he did not own a Pontiac car such as the one involved in this suit; that he bought such a car from a second-hand dealer in Arkansas and sold it, the latter part of November or first of December, 1937, to Truman Jones and gave him a bill of sale to it, but no such bill of sale was produced at the trial; that he did not know whether the bill of sale was recorded or not; that he did not execute a bill of sale to such Pontiac to the plaintiff on December 21st, 1937; that no one is interested with him in his business and Truman Jones had no interest in it; that he did not employ Jones to work for him and Jones did not employ him to work for Jones; that he knew C. H. Anderson but he had no interest in his business and was not employed by witness in the operation of his business; that he did not have any dealings with the plaintiff, and that, so far as he knew, no one authorized by him or as his salesman or representative ever sold the Pontiac car to the plaintiff, and that witness did not sell the car to plaintiff; that he bought plaintiff's Chevrolet from Truman Jones (and he produced the bill of sale, to which we referred above); he testified about plaintiff coming to his place of business and denied plaintiff's statements as to the conversation had between them; he said plaintiff wanted to buy a car from him and told him about his trying to make a deal with Truman Jones and Jones had misrepresented the car to him; and witness said that he told plaintiff he could make no trade with him until he got his Chevrolet car back from Jones; he denied that plaintiff tried to get his Chevrolet car back from him and in detailing his conversation with plaintiff, Hall said: "I knew I had the Chevrolet and I knew that when he came down there. I also knew I had a bill of sale to it. It wasn't my business to say anything to him about it."

He denied any knowledge of a note and mortgage to be signed by plaintiff in his favor and covering the Pontiac car. He said he bought the Chevrolet car from Jones as follows: "I got the Chevrolet from Truman Jones on an indebtedness. I paid him about $1,000.00 for it; he owed me some money, and I just made a credit on my books for it."

Abe Eckert, employed in the tax collector's office of Tarrant County, as a deputy, testified that he has custody of the records and transfers of automobiles. From the records he showed that the Pontiac car in question was sold by Jesse and Earl of Arkansas to B. G. Hall at Fort Worth; the receipt being dated October 1st, 1937; that the next record shows that on December 21st, it was transferred to C. O. Anderson (plaintiff) and Truman Jones as mortgagee; that witness had looked for the original bill of sale and could not find it; that "the records do not show any other transfer in the intermediate time before it was transferred to Mr. Anderson (the plaintiff)."

Some defendant introduced in evidence a chattel mortgage dated December 16th, 1937, signed by C. O. Anderson (plaintiff) to Truman Jones as mortgagee, covering the Pontiac car in controversy, and to secure twelve notes aggregating $650. It is not shown that such mortgage was ever placed of record, and it is certain that such mortgage was not relied upon by any party to this transaction, because shortly after December 16th, 1937, some one sent the note and mortgage dated December 17th, 1937, to plaintiff, requesting him to execute same, and those instruments run to B. G. Hall, not to Truman Jones. Plaintiff declined to execute these instruments and endeavored to get his Chevrolet back.

When Mr. Hall was cross-examined about the note and mortgage running in his favor, he said: "It does look like some one is just trying to put one over on me, in writing out a note and mortgage in my favor."

Hall testified that he knew in about 30 days after plaintiff executed the bill of sale to Jones that plaintiff wanted his Chevrolet back, and was claiming it.

Plaintiff sequestrated the Chevrolet car, and Hall replevied it and sold it before this case was tried.

The record discloses no objections to the court's charge.

We believe that the trial court has fallen into error on a mistaken theory of what is involved in this suit.

The plaintiff endeavored to get all of the parties with whom he was to deal and dealt before the court. The salesman, C. H. Anderson, could not be found and was dismissed. The defendants Hall and Jones were served with process, and answered by written pleadings, but Jones did not take the witness stand.

It is not a matter of insignificance that neither Hall nor Jones sought to recover from the plaintiff on the theory of a sale made to him of the Pontiac car.

No one seeks to require the plaintiff to live up to his bargain. The Pontiac car is not tendered to the plaintiff by either Hall or Jones. So, we have the plaintiff standing in court stripped of his own car and with no Pontiac delivered, or tendered, by any one in its place, and the two defendants, Hall and Jones claiming to own plaintiff's car.

According to the record before us, no one ever tendered the Pontiac car to plaintiff before this suit was brought by him.

Here we find the plaintiff executing a bill of sale covering his Chevrolet to one Truman Jones, dated December 17th, 1937, and executing a chattel mortgage and note in the sum of $650, payable to Truman Jones, dated December 16th, 1937, covering the Pontiac car, for which he was to trade his Chevrolet and pay a balance of $650, all such papers having been executed out at Rotan, Texas, when the salesman, C. H. Anderson, came out with the Pontiac and sought to interest him in a trade.

Then, in a "day or two", we find "some one"—the plaintiff did not say whom—sent plaintiff, through the mails, to his place of business at Rotan, a chattel mortgage and note covering the Pontiac car, and in favor of B. G. Hall. Take either horn of the dilemma, where do we find the defendants Hall and Jones? They have undoubtedly converted plaintiff's Chevrolet to their own use and benefit. The defendant Hall cannot contend that he is an innocent purchaser for value and without notice of plaintiff's claims. He gave nothing of value for plaintiff's car. He only credited his debtor, Jones, with some sum that he did not disclose at the trial. See 37 Tex.Juri. para 217, pages 480 et seq., and many cases cited.

After Hall learned the facts, he had not sold the plaintiff's Chevrolet. In fact, he sold it after this suit was brought and after the plaintiff had sequestrated the car and Hall had replevied it.

Hall has not lost the debt that Jones owes him, since he is not a bona fide purchaser of the Chevrolet car for value and without notice of plaintiff's rights.

With the testimony and facts in evidence before the jury, all admitted without objection, and the absence of any tender of the Pontiac car by either Hall or Jones, and the failure of Jones to testify to his part in the transaction, the jury were warranted in believing that C. H. Anderson and Hall and Jones were working together in this transaction, in which event the salesman, C. H. Anderson, having worked up the trade with plaintiff, and Hall and Jones having accepted his services in connection with the trade, he would become the agent of each of them, as a matter of law, even though he may never have acted as agent for either of them before or at any time afterward. To be an agent one does not have to be regularly employed.

Let us take the other horn of the dilemma and view the matter from the angle most favorable to Hall. The evidence is ample to support the jury's verdict that C. H. Anderson was the agent of Jones in the transaction, and that he made false representations as to the Pontiac car, which were material, and Hall, by his own testimony, having shown that he was not an innocent purchaser for value without notice of appellant's claims, appellant was entitled to a joint and several judgment against Hall and Jones.

We are of opinion that appellant's testimony and other evidence, notably Hall's admissions, show injury sustained by appellant. Appellant was entitled to that for which he was bargaining. Appellees could not put off on him something different and say to him: "What we sell you is as good or better than the thing we represented that we were selling to you." Nance v. McClellan, 126 Tex. 580, 89 S.W.2d 774, 106 A.L.R. 117; 12 R.C.L. § 138.

A well considered opinion that covers the case before us is J. I. Case Threshing Mach. Co. v. Webb, Tex.Civ.App., 181 S.W. 853, writ denied, and cases cited therein.

It follows that appellant is entitled to a joint and several judgment against appellees Hall and Jones for the value of his Chevrolet.

It is ordered that the judgment of the trial court to the effect that appellant take nothing as against Hall and Jones be and it is hereby reversed and judgment is here rendered for appellant, jointly and severally against appellees Hall and Jones, in the sum of $300, and for all costs, and that execution issue in due season, and that plaintiff's contract of purchase of the Pontiac automobile be in all things cancelled.

The issues as to appellant's cause of action and appellee Hall's cross-action

against his co-defendant Jones being severable, and the facts in issue on such cross-action not having been fully developed, it is ordered that this cause as it relates to the cross-action between Hall and Jones be remanded for a trial as to such issues.

■ Appellant Anderson not having been shown to be a party to repairing the Chevrolet car, it is the judgment of this court that appellee Hall take nothing against appellant as to the cross-action against appellant for such repairs.

The judgment of dismissal as to defendant C. H. Anderson is by us undisturbed.

The judgment of the trial court is undisturbed in part, reversed and rendered in part, and reversed and remanded in part.