## WILLIAMS et ux. v. RITCHESON et al.
### No. 11833.

Court of Civil Appeals of Texas.
San Antonio.

June 16, 1948.

Rehearing Denied July 14, 1948.

Strickland, Ewers & Wilkins, of Mission, for appellants.

Smith & Oakleaf, and Greer, Cox & Patterson, all of McAllen, for appellee.

NORVELL, Justice.

This is an appeal from a decree cancelling a deed and certain instruments in writing. Trial was to the court without a jury. No findings of fact or conclusions of law were requested. As the disposition of appellants' points is largely controlled by the facts, we make the following statement, in accordance with the rule that all fact findings and fact inferences having support in the evidence are presumed to have been found by the trial judge in favor of the judgment.

Prior to October 21, 1946, the appellants, C. B. Williams and his wife, Florence B. Williams, were the owners of a five-acre orchard tract, described as the South 5 acres of the North 21.25 acres of Lot No. 52—1 of the West Addition to Sharyland subdivision in Hidalgo County, Texas. This property was listed for sale with Herman H. Fass, a real estate broker, for $7,500.

Lot No. 52—1 contains approximately 40 acres, and 5 acres extending across the lot would account for seven rows of citrus trees. Williams testified that he told Fass his five acres could be located by going to Mile Eight and Inspiration Road, then "you go north and the first thing you strike is small trees, then you go until you come to a block of trees seventeen years old and you take off ten acres, approximately fourteen or fifteen tree rows, and then my grove starts and step off seven tree rows—you can tell the difference in the soil."

Fass took Mrs. Ritcheson and her husband, A. A. Ritcheson, out to look at the

property, but, according to his testimony, he made a mistake and showed the first seven rows of large trees next to the grove of small trees upon the lot.

The parties returned to Mission, Texas, and the Ritchesons attempted to secure some concession in price. Fass stated that he did not believe Williams would come down on the price, but that he would be willing to split his commission.

Mrs. Ritcheson's version of this transaction was as follows:

"I felt like that (the price for the land) was a little high. I asked him if he would go back (to Williams) and make a better price. He (Fass) said, 'Mr. Ritcheson is in the real estate business and I can give him one-half of my commission and that will cut the price down to that extent."

The deal was closed upon the basis suggested, and the sales contract was drawn up in Ritcheson's office with Mrs. Ritcheson using a typewriter. The description of the property was furnished by Fass. The contract on behalf of Mrs. Ritcheson, the purchaser, was made in the name of her daughter, Joyce Craft. According to Mrs. Ritcheson, this land was to be paid for out of her separate estate. Notes were involved and the property, was taken in the daughter's name in order to prevent confusion of the estates of A. A. Ritcheson and Mrs. Lillian Ritcheson. This contract was executed on October 21, 1946. Some time later, in November, a deed was executed by C. B. Williams and wife, conveying the South 5 acres of the North 21.25 acres of Lot No. 52—1 to Joyce Craft. In this deed a vendor's lien was retained to secure the payment of two promissory notes, aggregating the sum of $3,500. These notes were also secured by a deed of trust. Miss Joyce Craft had theretofore conveyed the property to Mrs. Ritcheson as a part of her separate estate. Fass paid Ritcheson the sum of $187.50, which amounted to one-half of his commission.

A short time after the deal was consummated, the Ritchesons discovered that a mistake had been made. Fass admitted that he had shown the wrong grove and testified that, "I told Mr. Williams, 'There has been a terrible mistake made, I showed them the wrong grove and they don't want your grove.' * * * I told him I showed them the first seven tree rows next to the young grove. * * * I told Mr. Williams that I sold the wrong grove, that I showed the wrong grove to start with."

As no satisfactory settlement was worked out among the parties, Lillian Ritcheson, joined by her husband, and Joyce Craft Shipman, who had married R. M. Shipman and was joined by him in these proceedings, brought this suit seeking cancellation of the deed from Williams to Joyce Craft and cancellation of the notes and deed of trust executed in connection therewith. Mrs. Ritcheson also sought a return of $3,500 cash paid by her to Williams. A. A. Ritcheson tendered into court $187.50, the amount of money involved in the commission splitting transaction with Fass. The original petition was filed on December 23, 1946, shortly after the discovery of the mistake.

Williams resisted the suit and impleaded Fass as a third party defendant. As above indicated, judgment was rendered for Mrs. Ritcheson for the return of the $3,500 paid and cancellation of the written instruments involved. Williams was denied a recovery against Fass.

Appellants contend that the fact that A. A. Ritcheson accepted $187.50, which amounted to one-half of Fass' commission, conclusively bars a decree of equity cancelling the written instruments involved. Under Mrs. Ritcheson's testimony, which we presume the trial judge accepted as true, this commission splitting was a device for reducing the price of the tract of land. Williams was in no way injured or defrauded thereby. He had agreed to pay a 5% commission on $7,500, which would leave him $7,125 net. Fass received $375 under the agreement and, in order to reduce the purchase price of the property and effect a sale, he cut his commission in half. This was not fraudulent as to Williams. Scarborough v. Payne, Tex.Civ.App., 198 S.W.2d 917, 920, wr. ref.; Alling v. Vander Stucken, Tex.Civ. App., 194 S.W. 443, 446. Further, this

contention by appellants does not touch the controlling element in the case, i. e., that Williams intended to sell a certain tract of land while Mrs. Ritcheson intended to buy another and different tract of land. There was no meeting of the minds and, consequently, the agreement between them was voidable. The fact that Ritcheson received $187.50 from Fass, under the circumstances disclosed by the record, does not preclude Mrs. Ritcheson from appealing to a court of equity for relief.

▮ Appellants also insist that Mrs. Ritcheson, or her husband, should have discovered the mistake before the transaction was finally consummated. The trial judge evidently concluded that the Ritchesons relied upon Fass' representation that the property he had shown them was the property identified by the description which he furnished when the contract was being prepared. The evidence does not conclusively establish that the Ritchesons relied upon an investigation of their own to identify the property. They were entitled to rely upon the representation made to them by Fass, the agent of Williams. Labbe v. Corbett, 69 Tex. 503, 6 S.W. 808; Cattle Raisers' Loan Co. v. Sutton, Tex. Civ.App., 271 S.W. 233.

▮ It seems that the property actually shown by Fass to the Ritchesons was the South 5 acres of the North 10 acres of the South 14.25 acres of Lot 52—1. Appellants say that the evidence shows that the tract described in the contract and deed (South 5 acres of North 21.25 acres of Lot 52—1) was more valuable than the tract which was shown to the Ritchesons and it, therefore, appears that appellees suffered no pecuniary loss. This does not answer the proposition that there was no valid contract because the minds of the parties never met. The Ritchesons never intended to purchase rows 15 to 22, inclusive, of the older trees, counting north from the young trees on the south of the lot. This tract was not shown to them. See Nance v. McClellan, 126 Tex. 580, 89 S.W.2d 774, 106 A.L.R. 117, and annotations following in 106 A.L.R., where it is said (p. 138) that:

"In no case involving misrepresentation or mistake as to the identity of property sold has the buyer's right to rescind been held dependent on his showing pecuniary damage."

▮ There was no error in the trial judge's rulings upon the admission of testimony. Objection was made to A. A. Ritcheson's relating what was said to him by Fass and by Frank Stilman, who took care of Williams' five acre tract. According to Ritcheson, he put up a sign on the tract he supposed his wife had purchased, Stilman then told him that the tract was not the one he had been taking care of for Mr. Williams. Ritcheson also testified that after this conversation with Stilman, Fass admitted to him that a mistake had been made.

▮ This testimony was not hearsay but was material upon the issue of mistake and the discovery thereof. However, should this testimony be disregarded the judgment is not without support in the evidence. Trial was to the court without a jury. Any error in admitting the testimony was harmless. Garcia v. Cleary, 50 Tex.Civ.App. 465, 110 S.W. 176.

▮ The trial court refused to allow Williams a recovery upon his cross-action asserted against Fass and A. A. Ritcheson. This cross-action was based upon the theory that Fass and Ritcheson (by accepting the $187.50) were agents of Williams and negligent in showing the wrong tract of land. There is no basis for an assertion of liability against Ritcheson disclosed by the evidence, and we can not say that Fass' liability to Williams is established as a matter of law. Further, appellants' brief does not point out any basis in the evidence for assessing or measuring the damages sustained by Williams as a result of Fass' alleged negligence.

We have examined all of appellants' points of error and are of the opinion that none of them discloses a reversible error. The evidence fully supports the judgment of the trial court. All of appellants' points are overruled and the judgment appealed from is affirmed.