## EX PARTE EVA MADDOX.

No. 15683. Delivered November 2, 1932.
State's Rehearing Denied March 22, 1933.
Reported in 58 S. W. (2d) 516.

The opinion states the case.

*Otis Rogers, Houtchens & Houtchens,* and *J. Harold Craik,* all of Fort Worth, for appellant.

*R. E. Rouer, Geo. C. Kemble, Slay & Simon,* and *Wm. H. Gilmartin,* all of Fort Worth, amici curiae.

*Jesse E. Martin,* District Attorney, and *Cecil C. Rotsch* and *Stanley Bransford,* Asst. Crim. Dist. Attys, all of Fort Worth, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, PRESIDING JUDGE.—This is an appeal from an order of the Criminal District Court of Tarrant county refusing to discharge the relator upon a writ of habeas corpus.

The relator is confined by virtue of a prosecution and judgment based upon section 22 of an ordinance of the city of Fort Worth, which reads as follows:

"Section 22.    Spite Fence Prohibited—Defined.    It shall be unlawful for any person, firm or corporation to erect, build, keep or maintain any spite fence within the corporate limits of the City of Fort Worth, and the term 'spite fence' shall be understood to mean a fence intended to or which has the effect of excluding light or air from neighboring yards or houses.

"Section 22.    Penalty—All violations of the terms of section 22 hereof shall be punished by a fine of not less than one dollar nor more than ten dollars.    (Ord. No. 100.    June 25, 1909; E. 401.)"

The order is based on section 23 of the charter of the city of Fort Worth, which reads thus:    "Fences—Height of—Spite Fences.    The said Board of Commissioners shall have the power to regulate the height and character of fences on private property and the erection and maintenance of same within said city and to prohibit the erection or maintenance of 'spite fences,' which are intended to have the effect of excluding light or air from neighboring houses, and to provide appropriate penalties for the execution of this power."

The validity of the ordinance is challenged upon the conten-

tion that it is not a subject within the scope of the police power of the city; also, upon the contention that the ordinance is not sufficiently definite in the description of the offense to support a criminal prosecution. That there are limitations in the authority of a city in the exercise of the police power restrictive of the use of private property is fundamental. The extent or scope of the limitation is a subject of much conflict of opinion as it appears in the judicial reports and textbooks. It is believed that all precedents agree that the following quotation from Ruling Case Law, vol. 4, page 399, is a correct statement of the law: "The regulations adopted must, however, be of a reasonable character adapted to the accomplishment of the purposes on which the constitutional authority rests, and having a real, substantial relation to the public objects which the government can accomplish, such as the promotion of the public health, or the safety, comfort and convenience of the people and the benefit of property owners generally. While, in some instances, considerations of taste and beauty may enter into such legislation, they are merely incidental to the main object of the law, for the inhabitants of a city or town cannot, under the present state of the laws, be compelled to give up rights in property for purposes purely aesthetic in their nature." See Spann v. City of Dallas et al., 235 S. W., 513; also, Blackman Health Resort v. City of Atlanta, 151 Ga., 507, 107 S. E., 525, 17 Amer. Law. Rep., 516, notes, page 523.

We have been referred to no provisions of the Constitution or the statutes, nor have we discovered any, which would give authority or sanction to the exercise of the power embraced in the ordinance quoted. Neither have we perceived in the enumeration of powers available to cities under the Home Rule Amendment, which is set forth in article 1175, Rev. Civ. Stat., 1925, any provision which would warrant the enforcement of the ordinance mentioned. Touching the scope of the police power as embraced in the particular ordinance under consideration, the case of Klein v. Gehrung, 25 Tex. Sup., 232, 78 Amer. Dec., 565, is of interest. Gehrung brought suit against Klein to compel him to remove a fence built on his land in the city of New Braunfels because it obstructed Gehrung's windows. The decision in the trial court was against Klein. The opinion of the Supreme Court of this state rejected the principle of law which in England had been held to entitle one by long usage to acquire a prescriptive right to the light in his structure and to forbid the adjoining owner in the use of his land to interfere with the lights in the building of his neighbor. On this subject, the court said:

"Nothing, as has been said, can be more certain than that every one has a right to use his own as he pleases, provided he does not thereby injure others; and it is inconceivable that, upon any principle, one can acquire a right or interest in that which is another's, merely by the manner in which he uses his own. If he could, it would result that one's right to the use and enjoyment of his property would become lost to him by the acts of another which in no way affected him, and against which, consequently, he had no remedy, no means of redress or prevention, unless, as has been said, by building a wall between himself and his neighbor. Such can not be the doctrine of the common law. And we think it has been sufficiently shown that we have both principle and authority for holding that the present action cannot be maintained. * * *

"The occupant of a log-house in a new town, which had been founded but little more than ten years when the right was asserted, denies the right of the adjoining proprietor to put a fence around his lot, because it will occasion a partial obstruction of the light and air previously enjoyed by the occupants for that period. The windows, it seems, are so low that a fence of ordinary height cannot be built without obstructing the light, and the witnesses think the house diminished in value twenty-five dollars; and the plaintiff thereupon claims the prescriptive right to have her windows protected as 'ancient lights;' and thereby, if need be, wholly to deprive the adjacent proprietor of the use of his lot, at least to deprive him of the right to build or improve upon it in such manner as his interest or fancy may dictate. * * *

"Every one who builds upon the margin of his lot, in a town or city, does so with a knowledge that the adjoining proprietor had the same right; and if he would not be put to inconvenience in consequence of the exercise by his neighbor of his right, he must have respect to that right in the uses to which he appropriates his own; so that he may enjoy his own, and at the same time suffer his neighbor to enjoy that which is his."

Practically without exception, the holdings of the courts of the United States are in accord with the announcements made in the case of Klein v. Gehrung, supra, to which reference is made above. That is to say, that no legal action can be sustained forbidding the owner of land from fencing it or punishing him for doing so although it may obstruct the light and air from the land of his neighbor. See Ency. of Law & Proc., vol. 1, p. 788, subd. B. Even in those jurisdictions in which injunctions have been granted against the maintenance of a

so-called "spite fence," no remedy exists for their maintenance, although the motive which inspired them may be malevolent, unless it also appear that the fence is of no benefit to the owner who constructed it. See Ency. of Law & Proc., supra, page 789; also, Wilkinson Live Stock Co. v. McIlquham, 83 Pac., 364, 3 L. R. A. (N. S.) 733 (see page 737). It may be added that in those jurisdictions last mentioned, namely, such as have sanctioned the abatement of a so-called "spite fence," the remedy has been by injunction or other civil remedy, and so far as we have observed, in none of them has it been declared that for building a fence upon his own land the owner has been held to have committed a criminal offense. See Karasek v. Peier, 50 L. R. A. 345.

In consonance with the great weight of authority and in accord with the declaration of the Supreme Court of this state in the case of Klein v. Gehrung, supra, we are constrained to conclude that the relator should be discharged from custody, and it is so ordered.

*Relator discharged.*

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In our original opinion we said: "We have been referred to no provisions of the Constitution or the statutes, nor have we discovered any, which would give authority or sanction to the exercises of the power embraced in the ordinance quoted." In the state's motion for rehearing our attention for the first time is directed to section 22, article 16 of the Constitution, which reads as follows: "The legislature shall have the power to pass such fence laws, applicable to any subdivision of the state or counties, as may be needed to meet the wants of the people." It is the state's contention that the foregoing constitutional provision was authority for the Legislature (Special Laws, R. S., 31 Leg., Ch. 31, p. 227) to incorporate in the special charter granted to the city of Fort Worth in 1909 (and which has been retained under the "home rule" amendment) the "power to regulate the height and character of fences on private property, and the erection and maintenance of same within said city, and to prohibit the *erection or maintenance of 'spite fences,' which are intended to have the effect of excluding light or air from neighboring houses, and to provide appropriate penalties for the execution of this power.*" We deem it unnecessary to decide whether the constitutional provisions mentioned conferred the power exercised by the Legislature. It seems clear that the city in passing the ordi-

nance upon which the prosecution rests exceeded the power attempted to be granted. In the motion for rehearing it is conceded that no conviction could be had unless "the fence was erected for spite, and was intended to and did exclude light or air," and was not constructed to serve some beneficial purpose to the owner. The grant of power to the city limited it to the prohibition of fences "which were *intended to* exclude light and air." The ordinance passed by the city, however, defined a 'spite fence' as one which was *"intended to, or which has the effect of* excluding light or air,"* etc., regardless of the purpose of its erection or maintenance. Complaint against relator seems to have been drawn under the latter clause of the ordinance. It charged that she unlawfully maintained a spite fence which had "the effect of excluding light and air" from a neighboring yard, it being nowhere averred that such was the intention in either the erection or maintenance of the fence. Our former opinion made proper disposition of the case regardless of the state's present contention, regarding which we express no opinion, as it is not necessary to the disposition of the case. The state's motion for rehearing is overruled.

*Overruled.*