BOYS TOWN, Inc., Appellant,

v.

Pauline Pipkin GARRETT, et al., Appellees.

No. 3292.

Court of Civil Appeals of Texas. Waco.

Sept. 29, 1955.

Rehearing Denied Nov. 17, 1955.

Sleeper, Boynton, Darden & Burleson, Waco, for appellant.

Barney A. Garrett, Richey, Sheehy & Teeling, Waco, for appellees.

TIREY, Justice.

This is an appeal from an order denying a mandatory injunction. Appellant grounded its cause of action on what it alleged to be injuries accruing to it because the appellees had constructed a wall about 18 feet high and 48 feet long from the North boundary of Herring Avenue to the West wall of their building and on property line adjacent to appellant, and that its sole relief was by injunction. Appellant alleged, among other things, that the construction and maintenance of the wall in effect violated its right to enjoy the use and benefits of its property. The wall constructed by appellees was built after appellant acquired the property adjacent to appellees' property, but prior to the time that appellant built its store building on the adjacent property. The court overruled appellees' motions to dismiss the cause, for summary judgment, and for instructed verdict. The jury found substantially (1 and 2) that the wall constitutes an invasion of appellant's interest in the private use and enjoyment of its land and the building thereon since the date of the completion and opening of the building in October of 1953, and that such invasion is substantial; (3 and 4) that appellees constructed the wall with knowledge that it would result in the invasion of the appellant's interest in the private use and enjoyment of its land and the building thereon, and that such invasion is unreasonable; and (5) that such invasion was not inspired solely by hostility and a desire to cause harm. The court overruled appellant's motion for judgment on the verdict and granted appellees' motion for judgment non obstante veredicto, and in the judgment we find this recital: "* * * and the court having heard the argument of counsel on said motion is of the opinion and finds: (1) that from the evidence it is undisputed that the wall in controversy was constructed by the defend-

ants on their own property; (2) that there is no evidence that said wall is structurally unsafe or creates any danger or hazard to the plaintiff or its property; * * *." And the court decreed that appellant take nothing by its suit, and that appellees go hence without day, and adjudged the costs against appellant. Appellant seasonably perfected its appeal to this court. The decree is assailed on five grounds. They are substantially: (1) The court erred in overruling appellant's motion for judgment upon the verdict, and in entering judgment for appellees non obstante veredicto, because the jury found in favor of appellant, and the verdict being supported by both pleadings and evidence, the court should have granted appellant's motion for judgment; (2) because there was sufficient evidence to support the jury's finding that the wall constituted an invasion of the appellant's interest in the private use and enjoyment of its land and the building thereon; (b) that such invasion was substantial; and (c) that appellees constructed the wall with knowledge that said wall would result in an invasion of appellant's interest in the private use and enjoyment of its land and the building thereon, and that such invasion was unreasonable; (3) because the court impliedly held that appellant was not entitled to a reparative injunction against appellees; (4) because the court erred in holding and finding as a fact that the wall was constructed wholly on appellees' property; and (5) that such wall was structurally safe and did not create any danger or hazard to appellant's property.

Appellees' counter points are substantially: (1) Since appellees constructed their building on the northwest corner of their lot and improved the south portion of the lot as a parking area, and thereafter further improved their property by extending the West wall of their building on their own property to their South property line, that appellant, by purchasing the adjoining lot, did not acquire an easement of view or an easement of ingress or egress over and across appellees' lot, and the court correctly denied appellant's plea for a mandatory and perpetual injunction requiring appellees to tear down and remove the wall; (2) that since appellant failed to show that appellees' wall trespassed on appellant's property or invaded appellant's property in any manner, or that said wall is structurally unsound or created any danger or threatened danger to appellant, its employees or customers, or any fact or facts which showed that appellees have, by the construction of their wall, deprived the appellant of any legal right which it has in its property, the court properly denied appellant's plea of injunction; (3) since appellees constructed the wall in controversy on their property under a permit issued by the City of Waco, which wall was structurally safe and invaluable to appellees, and which wall constituted no invasion or threatened invasion of appellant's property, and violated no legal rights of appellant, the court properly denied appellant's plea for injunction. (Appellees' 4th and 5th counter points relate to errors of the court claimed by appellees to have affected adversely their interests which, owing to the views we take of the case, become immaterial.)

We think the controlling facts here are without dispute. The appellees acquired the corner lot at the intersection of 18th and Herring Avenue in the year 1948 or 1949 and thereafter erected a building thereon for the purpose of operating a drug store. The property fronts South on Herring Avenue and extends North along the West line of North 18th Street for a distance of approximately 165 feet. In 1950 appellees constructed a building on the Northwest portion of said lot, such building being 38 feet wide and 120 feet deep, the East wall being 108 feet, the West wall 120 feet and the North wall 41.7 feet, and the South wall was 29.8 feet, with an angular corner of 16.8 feet. The store had display windows in both the East and South walls; there was also constructed a five foot wide sidewalk in front of their store and along the East wall to the alley, and there was also constructed a sidewalk or

island approximately 5½ feet in width and approximately 6 inches above the paved portion of the parking area, beginning at the Southwest corner of the store and extending South to their property line a distance of some 45 feet, and thence South to the North curb line of Herring Avenue, a further distance of 14.7 feet, or a total distance of 59.7 feet. In front of the store there are three head-in parking spaces, approximately 7½ feet wide by 18 feet deep. To the South of these three head-in parking areas, extending to the curb line of Herring Avenue, there are five additional head-in parking spaces of the same width and depth. There is a distance of approximately 18 feet dividing these two parking areas. There are also three parking areas in front of the angular corner of the same width and depth. There are also ten parking spaces of the same width and depth along the North 18th Street side of the drug store. At the time of the original construction there was an advertising sign attached to a metal pole at the Southeast corner of the Pipkin lot, a large advertising sign on top of the Pipkin building, and a large advertising sign on the East wall of the drug store along North 18th Street near the rear of said building. Between the South line of the five foot concrete sidewalk that extends across the front of the drug store and the South line of the Pipkin lot, the distance is approximately 43 feet on the ground for the parking area. Appellees also constructed a walkway from their building to Herring Avenue for the use of appellees' customers. On each of the other three corners is a filling station with the sidewalk and curb lines cut out so that customers of these stations can drive from the streets into the filling stations and the only parking area for customers on or near the intersection of 18th Street and Herring Avenue is the parking lot on the South and East sides of appellees' lot and immediately in front of their store and the parking space provided by appellant after it constructed its building consists of six spaces fronting Herring Avenue and then the space on the West side, which was approximately 60 feet wide and 165 feet deep, and the parking space in the rear of the building. This location is about three miles from the downtown business area of Waco and there is practically no foot traffic in this area and a parking area for suburban customers is needed. It is also without dispute that the automobile traffic at this intersection is very heavy.

In February 1953 appellant purchased two lots lying immediately West of and adjoining appellees' lot. Thereafter appellant employed an architect to draw plans for two buildings to be constructed on appellant's two lots, fronting South on Herring Avenue. After these plans were prepared appellant's President and architect conferred with appellees for the purpose of acquiring a community interest in appellees' West wall. At this conference appellant disclosed the fact that the building it intended to construct would be located near the front south line of its lots, leaving six parking spaces for appellant's customers on Herring Avenue, but provided for parking space in the rear, which appellant offered to share with appellees. Appellant's plan called for a building 40 feet wide and another building 30 feet wide, which appellant proposed to lease to another concern for business purposes. When appellees learned the location of the building they were greatly concerned because appellant was leaving so little parking space for its customers on Herring Avenue. When appellees saw the appellant's plan for its buildings, they ascertained that it included a display window in the East wall. It also appears at this conference that appellees suggested to appellant that it construct its building at a distance from the North line of Herring Avenue so that the outside South wall of the building would be approximately on the line with their South wall. This the appellant declined to do. We think the correspondence between appellant and appellees is pertinent here and reflects their negotiations with reference to the matter. On May 1, 1953 appellant wrote appellees as follows:

"This letter is to clarify our decision on the location of our building at 1803

Herring. Upon taking consideration of your views expressed on the subject we have decided on the following:

"First, we have decided on to pass up, at the present time, construction of the building adjacent to us. This means that we are sacrificing a lease that would pay us $4000.00 a year in order to assure us and the Pipkin interest that there will be sufficient parking area, namely, a parking area of 60 x 165 feet.

"Secondly, we are going to construct signs for the parking area welcoming both Boy's Town and Pipkin customers.

"We know that this arrangement will take care of the maximum parking needs. If you still desire after these concessions to prohibit our customers from interfering in any way with your parking area we believe that a couple of stand signs, the type generally used, with Pipkin Parking Only would be sufficient. We are still going to welcome your customers to our lot.

"Looking forward to a prosperous association between your firm and ours, we remain * * *."

Appellees, on May 4th, replied to appellant in the following manner:

"Thanks for your letter with reference to your building to be located at 1803 Herring. We indeed regret that we have been unable to convince you to our views in regard to this problem. Your proposal of an inside parking area, in our opinion and from our investigation, is no solution at all. You leave us no alternative but to do everything in our power to protect what parking space we have by extending our West wall to our property line. We wish to assure you of our friendship and cooperation and appreciate your interest in this problem, and assure you of our most cordial friendship and wishes for the success of your venture. We deeply regret that we are unable to agree on a common solution of this parking problem."

Thereafter appellant proceeded to construct its building according to its letter of May 1st. It was a single story of steel and masonry, the West wall was 108 feet, the North wall, with compensating ell, was 30.-35 feet. Its East wall was 100 feet. Its South wall was recessed but covered a width of 30.35 feet. It had display windows in the South wall for the display of merchandise. It also had a display window in the East wall seven feet in height by eighteen feet in width. The South wall of the Boys Town building was 34.8 feet South of the South wall of the appellees' store. Appellant constructed its building in 1953 and opened for business in October of that year. On the West side of appellant's building, an area of 60 x 165 feet, and to the rear thereof, it constructed an asphalt parking area approached by driveways and this asphalt parking area contained a total of 12,364 square feet. Appellees extended their wall to its same height after the appellant began excavation for the construction of its building, and this wall was a continuation or extension of the West wall of their building, and this new extension was on the property of appellees and along their West line to the North line of Herring Avenue, a distance of approximately 48 feet.

On the 20th of May 1953 appellant filed its original petition in this cause in which it alleged substantially that the construction and maintenance of this wall by appellees was an invasion of its interests in the use and enjoyment of its land; that such invasion was intentional and amounted to a complete interruption of its use of its land and store buildings because the view of the customers and the traveling public of its East display window would be completely blocked and that the view of customers and the traveling public of its South display windows would be substantially impaired and that plaintiff's customers approaching its store from the East would be obliged to detour South around said wall, and those leaving said store traveling East would be required to detour South and around said

wall and that said interference would continue so long as said wall is permitted to stand and that the harm that plaintiff will suffer from said interference with its use and enjoyment of its land and store buildings will arise out of a depreciated market value of the land and buildings for mercantile purposes, together with a loss of profits in the operation of its store and will also arise out of the discomfort and annoyance caused to appellant's customers, and that plaintiff's store building will be rendered valueless to the plaintiff and that it will sustain a great and irreparable damage, and that they have no adequate remedy at law, and they prayed for a mandatory perpetual injunction against the appellees.

Appellant in its brief says that the evidence shows that the interference or invasion is unreasonable on three separate grounds: (1) the harm done appellant far exceeds the utility of the wall to appellees. Boys Town has social value. It is the only store in Waco that furnishes clothing to teen-age boys; it also sells men's clothing, sporting goods and athletic equipment; it gives employment to at least six Waco people; it pays State, County and City taxes; Boys Town is located in a zoned community center; it is a place suitable for the selling of goods, wares and merchandise; it is a busy intersection at 18th and Herring Avenue, and appellees could have avoided the harm by not building the wall in the first instance; that no social value attaches to the wall in behalf of appellees; the building of the wall was obviously not suitable to the character of the locality; it gives trouble to the operators of automobiles; it annoys and inconveniences the people residing in the area; and for these reasons the conduct of appellees in intentionally constructing the wall and thus invading the interests of appellant in the use and enjoyment of its property had no utility. (2) It was practicable for appellees to have avoided the harm in whole or in part without undue hardship to themselves; they could have effectively achieved their main objective in such a way that the harm to appellant would have been substantially reduced or eliminated; appellees offered two excuses for the wall, (a) to protect their parking and (b) to advertise the location of their store. Neither of these two excuses will stand the most superficial examination; the 60 foot long by 5 foot wide by 6 inch high island of concrete, extending from the Southwest corner of the Pipkin Drug Store South to the curb was as effective to prevent Boys Town customers from using the Pipkin parking as the high wall erected on top of the island; a small sign, on top of the island, or on the curb, advising that the parking was reserved for Pipkin customers, would have been effective for any self-respecting citizen; Pipkin had a high sign before the wall was erected at the Southeast corner of 18th and Herring, another large sign on top of their store, and another on the East wall of the drug store building, and if those did not notify a passing motorist or pedestrian of the location of the Pipkin store, then the high wall, with a sign on only one side, will not more effectively do so. Attributing full sincerity to appellees two reasons of protecting parking and advertising through the use of a wall, they could have achieved the same by a two or three foot wall or by a two or three foot cyclone fence, and at much less expense to themselves. (3) The wall is unsuited to the locality. The area in the immediate vicinity of Boys Town and Pipkin Drug Store is commercial. To the West and to the East of this commercial area are residential areas. If the court sustains appellees, then each lot owner in Texas, in each city in Texas, on some flimsy pretext, can wall his neighbor in, and for that reason the intentional invasion, as found by the jury, was unreasonable.

We believe that appellant's position, as above outlined, is in irreconcilable conflict with the rule in Texas. In Klein v. Gehrung, 25 Tex.Supp. 232, 233, 78 Am.Dec. 565, we find this statement of the rule:

"Nothing, as has been said, can be more certain than that every one has a right to use his own as he pleases, provided he does not thereby injure others; and it is inconceivable that, upon any principle, one can acquire a right or interest in that which is another's, merely by the manner in which

he uses his own. If he could, it would result that one's right to the use and enjoyment of his property would become lost to him by the acts of another which in no way affected him, and against which, consequently, he had no remedy, no means of redress or prevention, unless, as has been said, by building a wall between himself and his neighbor. Such cannot be the doctrine of the common law. And we think it has been sufficiently shown that we have both principle and authority for holding that the present action cannot be maintained.

"Everyone who builds upon the margin of his lot, in a town or city, does so with a knowledge that the adjoining proprietor has the same right; and if he would not be put to inconvenience in consequence of the exercise by his neighbor of his right, he must have respect to that right in the uses to which he appropriates his own; so that he may enjoy his own, and at the same time suffer his neighbor to enjoy that which is his."

 Our Supreme Court has not seen fit to disturb or modify the above rule, although it was written in 1860. Our Court of Criminal Appeals also followed this doctrine in Ex parte Maddox, 123 Tex.Cr.R. 249, 58 S.W.2d 516, 518, and after quoting the above paragraphs, made this statement:

"Practically without exception, the holdings of the courts of the United States are in accord with the announcements made in the case of Klein v. Gehrung, supra, to which reference is made above. That is to say, that no legal action can be sustained forbidding the owner of land from fencing it or punishing him for doing so although it may obstruct the light and air from the land of his neighbor. * * * Even in those jurisdictions in which injunctions have been granted against the maintenance of a so-called 'spite fence,' no remedy exists for their maintenance, although the motive which inspired them may be malevolent, unless it also appear that the fence is of no benefit to the owner who constructed it. * * * It may be added that in those jurisdictions last mentioned, namely, such as have sanctioned the abatement of a so called 'spite fence,' the remedy has been by injunction or other civil remedy, and so far as we have observed, in none of them has it been declared that for building a fence upon his own land the owner has been held to have committed a criminal offense."

See also Othen v. Rosier, 148 Tex. 485, 226 S.W.2d 622; Nance v. McClellan, Tex. Com.App., 126 Tex. 580, 89 S.W.2d 774, 106 A.L.R. 117; Fort Worth & D. C. Ry. Co. v. Ayers, Tex.Civ.App., 149 S.W. 1068, point 6, page 1071 (no writ history); Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513, points 1, 2, 3, 4, 5, 6 and 7, 19 A.L.R. 1387.

Moreover, the City of Waco is a Home Rule City. Under the powers given to a Home Rule City we find Sec. 26 of Art. 1175, Vernon's Ann.Civ.Stats., provides in part: "To divide the city in zones or districts, and to regulate the location, size, height, bulk and use of buildings within such zones or districts, and to establish building lines within such zones or districts or otherwise, and make different regulations for different districts and thereafter alter the same." Appellees applied for and obtained a valid permit from the City of Waco to extend their West wall in the manner it was extended and it is without dispute that they have utilized it for advertising purposes since it was so extended. It is appellees' contention that they built the wall with the intention of protecting their business and particularly their parking space. One of appellant's witnesses (one of its executives) testified to the effect that the wall had been effective for such purposes. We quote in part his testimony: "Q. Mr. Reeder, you say, I believe, that some of Pipkins' customers park on your lot. A . Yes, sir. Q. But none of yours park on their lot. A. Not that I have observed. Q. So then evidently that wall does keep your customers from parking over there on that Pipkin lot. Something keeps them from it,

doesn't it? A. Well, I'll say the situation keeps them from it."

 Whether the conduct of appellees in the extension and maintenance of the brick wall was neighborly or unneighborly, wise or unwise, is not for us to decide, nor is it controlling that the erection and maintenance of the wall and the use made thereof by appellees may offend the acute sensibilities of persons in that particular area, because a lawful and ordinary use of property is not to be prohibited because it is repugnant to the sentiments of a particular class. We find nothing in the record to indicate that the erection and use of the wall endangers or threatens the public health, the public safety, nor the public comfort or welfare. Appellees have been engaged in the operation of drug stores for many years (this being their seventh store) and have had occasion to give much consideration to the parking problem incident to the operation of a drug store. Appellees selected the site and built their store first and they set the pattern of spacing and placing buildings on that side of the street adjoining them which they believed to be advantageous under all the facts and circumstances for parking in that area. In so doing it appears that they have made a substantial investment and they have the right and duty to protect it in any lawful manner that they think best. Such is our system of free enterprise. Moreover, appellant was fully advised of appellees' views as to what they considered most advantageous to their business in that locality before it constructed its building. Since appellant and appellees could not compose their views as to the spacing and placing of buildings on the location in question, nor agree upon what was the best solution for the parking problem there, needless to say that appellant, in its exercise of its right under our system of free enterprise, had the right to space and place its building where it believed to be the most advantageous to it, but the exercise of this right by appellant does not give it the right to impose its view on appellees.

In view of the statement of the rule announced in Klein v. Gehrung, supra, and under the undisputed factual situation here presented, can appellant now complain of the erection and extension of the wall? We think not. It is our view that under the foregoing situation that the trial court should have granted appellees' motion for instructed verdict, and having failed to do so, it was the court's duty to grant judgment in appellees' behalf on their motion for judgment non obstante veredicto.

Accordingly, the judgment of the trial court is affirmed.

HALE, J., took no part in the consideration and disposition of this appeal.