The CITY OF WACO, Appellant,

v.

ARCHENHOLD AUTOMOBILE SUPPLY CO., Appellee.

No. 4246.

Court of Civil Appeals of Texas.

Waco.

Dec. 31, 1964.

Rehearing Denied Jan. 21, 1965.

Thomas R. Hunter, City Atty., Earl Bracken, Asst. City Atty., Jones, Boyd, Westbrook & Lovelace, Waco, for appellant.

Bryan, Wilson, Olson & Stem, Waco, for appellee.

TIREY, Justice.

In January 1962, the City of Waco, a home rule city, began the construction of a one-way viaduct beginning at the south side of Franklin Avenue and running to Webster Street. Appellee's property is located at the southwest corner of the intersection of South 17th Street and Franklin Avenue, such property fronting sixty feet on Franklin Avenue and extending back to the alley 165 feet. The viaduct was built wholly upon the right-of-way of the City of Waco separating the grade of South 17th Street from several railroad tracks and local industrial traffic. Prior to the construction of the viaduct appellee had full access to Franklin Avenue, and that access has not been interfered with. Prior to the construction of the viaduct appellee had access to the whole of South 17th Street and part of 17th Street remains open at ground level under the viaduct. Appellee purchased the property in 1952 and did so for the purpose of constructing thereon an automobile supply house and it is appellee's contention that it was important to its business that it have a corner location to place its building on. The building as constructed contained approximately 7000 square feet and fronted on Franklin Avenue with a side entrance, and a loading entrance on South 17th Street. The building was set back from the property line on South 17th Street 14.5 feet; this allowed off-street parking adjacent to South 17th Street on appellee's property, and allowed off-street loading and unloading facilities from South 17th Street at ground level. The building was set back from the property line of Franklin Avenue so as to allow head-in parking, but the exact distance it was set back is not shown. The viaduct had its place of beginning on what may be termed the south line of Franklin Avenue and the intersection of South 17th Street, and the viaduct elevated South 17th Street from ground level at Franklin Avenue to ground level at Webster Street some three blocks south of

Franklin Avenue. The elevation of South 17th Street abutting appellee's property was raised gradually from ground level before the construction of the viaduct to a height varying from approximately two feet to thirty-two feet above ground level.

Pertinent to this discussion plaintiff alleged that the City constructed the viaduct for public use and as a result plaintiff's property has been greatly damaged because of the fact that it completely blocked its access to its property on South 17th Street side, making it necessary to reconstruct its loading dock at an expense of $5,000.00, and that it does not provide a suitable means for the loading and unloading of the merchandise that it engages in selling, and that the deprivation of their access to South 17th Street for loading and unloading purposes has depreciated the reasonable market value of their property to at least the sum of $40,000.00.

The jury found that the market value of the property was reduced by reason of the construction of the viaduct and that its reasonable cash market value immediately before the construction was $61,475.00, and further found the reasonable cash market value immediately after the construction to be $46,475.00, and the court overruled the City's motion for judgment non obstante veredicto and granted plaintiff's motion for judgment for the sum of $15,000.00, and interest in the sum of $962.00 from November 1, 1962 to date, and 6% per annum from date of the judgment, which was entered on December 2, 1962. The City duly perfected its appeal.

Appellant's Point 1 is:

"The trial court erred in holding that the plaintiff was entitled to recover damages from the City of Waco for the limitation of access to South 17th Street when such limitation was due to a reasonable exercise of the City's police power and when plaintiff's property retained full access to Franklin

Avenue as well as the retention of access to a portion of South 17th Street."

We sustain this point and it will require that this cause be reversed and rendered.

■ Our view of this cause is that the controlling facts are without dispute and these facts are that the appellee had full access to its frontage on Franklin Avenue, and that that has not been interfered with. At the same time, the plaintiff's access to South 17th Street has been cut off from the intersection of such street with Franklin Avenue, but plaintiff still has access to its property by way of South 16th Street, and by the use of Mary Street, and by virtue of the circuitous alley south of and abutting the rear of appellee's property, which alley extends to the east side of the 18th street overpass, and such alley has an outlet onto Franklin Street at 18th. There is a partial access to plaintiff's property from the alley under the viaduct to the east side of its building up to a distance of about 80 feet from the intersection of South 17th with Franklin Avenue, but the exact distance is not shown, nor does it show the exact height of the overpass, but the elevation is graduated from ground level. The access to the appellee's property at ground level at the loading zone is adequate, and as we understand the record the only complaint is the circuitous route involved in getting to and from the loading zone. It is also without dispute that it was necessary to the plaintiff's business to change its loading dock from South 17th Street to the south side of the building, and there is no doubt that this is more inconvenient to the plaintiff's customers, because in approaching appellee's place of business from Franklin Avenue, which is a one-way street east beginning at the intersection of North 18th Street and Franklin Avenue, they would have to go to South 16th Street and intersect the alley between Mary Street and Franklin Avenue or go to Mary Street in order to get to plaintiff's loading and unloading dock. It is also true that their customers could enter a twenty foot alley from Franklin Street just east of the 18th Street overpass, and this circuitous route would take them into the alley just to the rear of appellee's building. To that extent it is an inconvenience and a limitation on the customer's access to the loading dock. There is ample evidence to sustain the jury's verdict that the reasonable market value of appellee's property had been damaged, but the City's answer to this contention is that the City of Waco, under the undisputed facts, had exercised its police power in a reasonable manner to construct the viaduct in order to provide for free and safe flow of traffic along South 17th Street in the City of Waco, and that the construction of the viaduct had not cut off all reasonable access to appellee's property. We are in accord with this view and think it is supported by the constitution and laws of the State of Texas, and our Supreme Court has so interpreted similar factual situations. In Spann v. City of Dallas, et al., 111 Tex. 350, 235 S.W. 513, our Supreme Court made the following statement:

"The police power is founded in public necessity, and only public necessity can justify its exercise. The result of its operation is naturally, in most instances, the abridgment of private rights. Private rights are never to be sacrificed to a greater extent than necessary. Therefore, the return for their sacrifice through the exercise of the police power should be the attainment of some public object of sufficient necessity and importance to justly warrant the exertion of the power.

"The public health, the public safety, and the public comfort are properly objects of this high importance; and private rights, under reasonable laws, must yield to their security.

"Since the right of the citizen to use his property as he chooses so long as he harms nobody, is an inherent and constitutional right, the police power cannot be invoked for the abridgment

of a particular use of private property, unless such use reasonably endangers or threatens the public health, the public safety, the public comfort or welfare. A law which assumes to be a police regulation but deprives the citizen of the use of his property under the pretense of preserving the public health, safety, comfort or welfare, when it is manifest that such is not the real object and purpose of the regulation, will be set aside as a clear and direct invasion of the right of property without any compensating advantages."

Article 1175, Vernon's Ann.Tex.St., provides that home rule cities, such as the City of Waco, has full power of local self-government and enumerates many powers that a home rule city may exercise. Section 16 of that article provides that a home rule city has

" * * * exclusive dominion, control, and jurisdiction in, over and under the public streets, avenues, alleys, highways and boulevards, and public grounds of such city and to provide for the improvement of any public street, alleys, highways, avenues or boulevards by paving, *raising*, grading, filling or otherwise improving the same * * *." (emphasis added).

Section 18 of Article 1175, V.A.T.S., provides that a home rule city has the right:

"To control, regulate and remove all obstructions or other encroachments or encumbrances on any public street, alley or ground, and to narrow, alter, widen or straighten any such streets, alleys, avenues or boulevards, and to vacate and abandon and close any such streets, alleys, avenues or boulevards * * *".

Article 1, Section 4, of the Charter of the City of Waco provides that:

"The City shall have exclusive dominion, control and jurisdiction in, upon, over and under the public streets, sidewalks, alleys, highways, public squares and public ways within the corporate limits of the City, and in, upon, over and under all public property of the City. With respect to each and every public street, sidewalk, alley, highway, public square, public park or other public way within the corporate limits of the City, the City shall have the power to establish, maintain, improve, alter, abandon, or vacate the same; *to regulate, establish, or change the grade thereof; to control and regulate the use thereof*; and to abate and remove in a summary manner any encroachment thereon." (emphasis added).

Section 5 of Article I of the Charter of the City of Waco provides that:

"The City shall have the power to develop and improve or cause to be developed and improved, any and all public streets, sidewalks, alleys, highways, and other public ways within the corporate limits of the City by laying out, opening, narrowing, widening, straightening, extending, lighting, and establishing building lines along the same; by purchasing, condemning, and taking property therefor; by filling grading, *raising*, lowering, paving, repaving and repairing, in a permanent manner, the same; and by constructing, reconstructing, altering, repairing, and realigning curbs, gutters, drains, sidewalks, culverts, and other appurtenances and incidentals in connection with such development and improvement authorized hereinabove, or any combination or parts thereof. * * *." (emphasis added).

In the case at bar the City of Waco has exercised its police power in constructing this overpass in order to provide for the public safety of traffic using South 17th Street, and in so doing has constructed

this viaduct over the main line of the St. Louis Southwestern Railway Company's track, and the main line of the Missouri-Kansas-Texas Railway Company track, and the various switching tracks adjacent thereto, and in so doing it has provided for safe traffic in this community for traffic moving from south to north one-way, and such viaduct, without question, contributes greatly to the safety and convenience of the citizens of this community, as well as all traffic moving from the south to the north over this viaduct; that it is a valid exercise of the police power granted to the City cannot be denied. In City of San Antonio v. Pigeonhole Parking of Texas, 158 Tex. 318, 311 S.W.2d 218, pt. 1, (which opinion is quite clear and comprehensive) we find the following statement by our Supreme Court:

"Undoubtedly the general rule is that access to a public highway is an incident to ownership of land abutting thereon and the corollary follows that this right cannot be taken or destroyed for public purposes without adequate compensation being given therefor. * * * While this rule is universally followed where the power of eminent domain is exercised, it does not apply when a municipality invokes its police power for the protection of the health, safety and general welfare of its citizens.

\* \* \* \* \* \*

" 'All property is held subject to the valid exercise of the police power; nor are regulations unconstitutional merely because they operate as a restraint upon private rights of person or property or will result in loss to individuals. The infliction of such loss is not a deprivation of property without due process of law; the exertion of the public power upon subjects lying within its scope, in a proper and lawful manner, is due process of law. Moreover, police regulations do not constitute a

taking of property under the right of eminent domain; and compensation is not required to be made for such loss as is occasioned by the proper exercise of the police power. * * *' " See Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475, 478.

As we understand the decision of our Supreme Court in City of San Antonio v. Pigeonhole Parking of Texas, supra, the burden of showing that the action of the City of Waco in building and constructing the viaduct was unnecessary, unreasonable and arbitrary was upon the appellee, and we think it has wholly failed to make such a showing, and that the action of the City in doing so, under the undisputed factual situation here, is conclusive and cannot be changed by our courts.

Finally, our view of our Texas Constitution and our Statutes and the City Charter of Waco, and the authorities here cited, are to the effect that the Texas Constitution provides that no person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; that the police power of the State has been delegated to municipalities to be exercised for the protection of the health, safety, comfort, convenience and welfare of the public, and when the police power of the State or a municipality is validly and reasonably exercised, damages caused thereby to abutting property is noncompensable and does not fall within the meaning of Section 17 of Article 1 of the Texas Constitution, Vernon's Ann.St.; that home rule cities, such as the City of Waco, have exclusive dominion, control and jurisdiction in, over and under its public streets, including the right to change the grade of such streets; that if there is substantial evidence in support of the need for, or reasonableness of, regulations of a municipality under its police power, the court will not substitute its

discretion for the governmental or legislative discretion of the governing body of the municipality; that the elimination of traffic hazards by the control of the direction of traffic, parking, relief of congestion, elimination of hazardous crossings, etc., are all valid exercises of a municipality's police power; that when a landowner's property is located upon a corner and has access to one street, if the safety, comfort, convenience, health or general welfare of the public demands a denial of access to the other street, such a denial of access by a municipality is a valid exercise of its police power and is noncompensable; that the State or a municipality has the right to reroute, relocate, improve, abandon, or vacate its streets in any reasonable manner that it deems necessary for public safety, health, comfort, convenience, or welfare of the community.

Under the foregoing expressed views each of the other points raised by appellant pass out of the case. As we have heretofore stated, the construction of the viaduct by the City was a valid exercise of its police power, and since appellee has access to its property as herein stated, and has not been denied total access to its property, there is no taking, and the loss and inconvenience it may have sustained is noncompensable. The Amarillo Court in Moorlane Company, et al., v. Highway Department of the State of Texas and City of Amarillo, Tex.Civ.App., 384 S.W.2d 415 (n. w. h.), in a recent decision handed down on October 26, 1964, supports the views here expressed. See also Pennysavers Oil Company v. State of Texas, Tex.Civ.App., 334 S.W.2d 546 (w. ref.); State of Texas v. Clark, 161 Tex. 10, 336 S.W.2d 612; Boys Town, Inc., v. Pauline Pipkin Garrett, Tex. Civ.App., 283 S.W.2d 416, (n. r. e.); City of Waco v. DuPuy, Tex.Civ.App., handed down this date, and cases therein cited.

The cause is reversed and rendered and the costs are taxed against appellee.