

# THE ATTORNEY GENERAL
# OF TEXAS

December 29, 1986

JIM MATTOX
ATTORNEY GENERAL

Honorable Oscar H. Mauzy                    Opinion No. JM-600
Chairman
Committee on Jurisprudence                  Re:  Whether  national  forests
Texas State Senate                          and federal wilderness areas are
P. O. Box 12068                             within the scope of chapter 152
Austin, Texas    78711                      of the Natural Resources Code

Dear Senator Mauzy:

Some time ago, you asked several questions about the scope of
chapter 152 of the Texas Natural Resources Code.  Because some of the
issues raised by your request were subject to litigation, we delayed
this response during the pendency of the litigation.  See Sierra Club
v. Block, 614 F. Supp. 134 (E.D. Tex. 1985).  The result of this
litigation may be relevant to your request.  This office is currently
involved in additional litigation regarding the aftermath of past
infestations.  Accordingly, this opinion addresses only questions
which do not relate directly to this litigation.  It has long been the
policy of this office to refrain from answering questions pending in
the courts.

Chapter 152 contains the Texas Natural Resources Code's Forest
Pest Control provisions.  You ask whether chapter 152 applies to
national forests and congressionally designated wilderness areas
located in Texas in a manner which requires federal officials to
control forest pests, such as Southern Pine Beetles, upon the demand
of the Texas Forest Service.  You also ask whether the state may
constitutionally require landowners, including both private landowners
and the federal government, to cut their trees to prevent the spread
of forest pests or to pay the costs of the Texas Forest Service for
doing so.  Background information provided with your request reveals
that experts disagree about whether extensive tree-cutting actually
eradicates  pine  beetles  or  is  an  appropriate  response  to  past
large-scale infestations.  Thus, your real concern may focus on the
methods employed by the Forest Service.

Your first question is whether the Texas Forest Service may
unilaterally require federal officials to comply with chapter 152.
Section 152.012 provides:

> (a) The service shall make surveys and investi-
> gations to determine the existence of infestations

of forest pests and means practical for their
control by landowners.

(b) Duly delegated representatives of the
service may enter private land and public land,
including that held by the United States if
permission is obtained, for the purpose of
conducting surveys and investigations.

(c) All the service's information shall be
available to all interested landowners. (Emphasis
added).

Nat. Res. Code §152.012. Section 152.012(b) indicates that the
service may only enter federal land to conduct surveys and investiga-
tions with the permission of the federal government. It follows that
state officials may not enter federal land to conduct forest pest
eradication programs without federal permission. Accordingly, this
opinion does not address your suggestion that the service cannot
require the federal government to comply with chapter 152 without
running afoul of the United States Constitution. See generally U.S.
Const. art. IV, §3, cl. 2; Kleppe v. New Mexico, 426 U.S. 529 (1976).

Moreover, a letter from the United States Department of Agri-
culture's Forest Service, submitted in response to your opinion
request, indicates that federal and state officials are in fact
working in concert on this matter and that continuing cooperation is
deemed essential to the preservation of federal land located in Texas.
Section 2104 of Title 16 of the United States Code provides expressly
for the protection of National Forest System trees from insects and
disease and authorizes federal cooperation with state officials. 16
U.S.C. §2104(b) (1982). Similarly, section 152.026 of the Texas
Natural Resources Code authorizes the Texas Forest Service to enter
into cooperative agreements with the federal government "to accomplish
the control of forest pests."

You express concern about the methods used to eradicate forest
pests. The appropriateness of the methods used by state and federal
officials in controlling forest pests depends upon factual determina-
tions which are beyond the scope of the article 4399, V.T.C.S.,
opinion process. It should be noted, however, that section 152.001 of
the Texas Natural Resources Code states that

[i]t is the public policy of the State of Texas to
control forest pests in or threatening forests in
this state in order to protect forest resources,
enhance the growth and maintenance of forests,
promote stability of forest-using industries,
protect recreational wildlife uses, and conserve
other values of the forest. (Emphasis added).

Additionally, the federal agencies involved must comply with all relevant federal statutes and regulations -- i.e., procedural and environmental regulations. See Sierra Club v. Block, 614 F. Supp. 134 (E.D. Tex. 1985); see also Texas Committee on Natural Resources v. Bergland, 573 F.2d 201 (5th Cir. 1978), cert. denied, 439 U.S. 966 (1978).

You also inquire whether the state may constitutionally require landowners, including both private landowners and the federal government, to cut their trees themselves or to pay the costs of the Texas Forest Service for performing this task. As indicated above with regard to lands owned by the federal government, the state may not unilaterally "require" the federal government to comply with chapter 152 of the code without obtaining federal permission. For the same reason, even if the federal government allows the Texas Forest Service to institute control measures against forest pests in national forests and wilderness areas in order to protect such lands, the state may not "require" the federal government to reimburse the state. The federal government may, however, agree to reimburse the state if such reimbursement is part of a cooperative agreement to preserve and protect the national forests and wilderness areas from destruction. See, e.g., 16 U.S.C. §2104(b) (1982); cf. 16 U.S.C. §2104(f) (1982) (limiting the use of appropriated federal funds).

With regard to the state requiring private landowners to cut their trees or to pay the costs of the Texas Forest Service for doing so, a fundamental constitutional question must be addressed. Under the Fifth and Fourteenth Amendments of the United States Constitution, private property may not be "taken" without "just compensation." See Penn Central Transportation Co. v. City of New York, 438 U.S. 104 (1978). Article I, section 17, of the Texas Constitution prohibits a state and its political subdivisions from "taking or damaging" private property for public use without providing "adequate compensation." City of College Station v. Turtle Rock Corporation, 680 S.W.2d 802 (Tex. 1984). Trees growing in the ground are deemed property, a part of the realty. City of Tyler v. Arp Nursery Co., 451 S.W.2d 809, 812 (Tex. Civ. App. - Tyler 1970, writ ref'd n.r.e.). A "taking" is an exercise of the government's eminent domain powers.

Under certain circumstances, however, property may be appropriated by government action without any compensation as an exercise of the state's police power -- the power to protect the public health, safety, and welfare. See, e.g., Miller v. Schoene, 276 U.S. 272, 280 (1928); Nunley v. Texas Animal Health Commission, 471 S.W.2d 144 (Tex. Civ. App. - San Antonio 1971, writ ref'd n.r.e.); City of Waco v. Archenhold Automobile Supply Co., 386 S.W.2d 174 (Tex. Civ. App. - Waco 1964), aff'd, 396 S.W.2d 111 (Tex. 1965). Traditional analysis distinguishes police power from eminent domain power by focusing on whether the government is preventing a public harm as opposed to forcing a private party to give property for a public benefit.

Defining the shadowy boundary where the police power ends and the exercise of eminent domain begins (and therefore where compensation must be made) has caused a generation of conflicting cases. See Cabaniss, Inverse Condemnation in Texas - Exploring the Serbonian Bog, 44 Tex. L. Rev. 1584 (1966).

Section 152.002 of the Natural Resources Code declares that "[f]orest pests are . . . a public nuisance." The legislature may declare certain things to be nuisances and may remit to administrative officers the authority to determine whether certain acts or things constitute public nuisances. See Stockwell v. State, 221 S.W. 932 (Tex. 1920); cf. Air Curtain Destructor Corp. v. City of Austin, 675 S.W.2d 615 (Tex. App. - Tyler 1984, writ ref'd n.r.e.); Hart v. City of Dallas, 565 S.W.2d 373 (Tex. Civ. App. - Tyler 1978, no writ). The declaration in section 152.002 that forest pests are a public nuisance authorizes an exercise of police power. Nevertheless, this does not prevent a finding that a "taking" has occurred.

The Texas Supreme Court holds that property may not be taken without compensation under certain circumstances, even in the exercise of the police power. City of College Station, 680 S.W.2d at 804; City of Austin v. Teague, 570 S.W.2d 389 (Tex. 1978); Attorney General Opinion JM-294 (1984). The Texas Supreme Court in City of Austin v. Teague, rejected an arbitrary application of the "police power" - "eminent domain" distinction in favor of a balancing test of whether the public need outweighs the private loss. 570 S.W.2d at 393. Consequently, the Texas Forest Service may require private landowners to cut their trees without constituting a taking for which compensation must be made only if the public need to protect forests by cutting infected or infested trees outweighs the loss to the landowner of the value of the trees. A determination of whether public need outweighs private loss depends upon the facts in any given case.

The means used by the Forest Service in eradicating or controlling forest pests or in dealing with past infestations is also relevant in balancing the damages suffered by the landowner with the need to control forest pests. A method of control which causes great private damage without actually effecting any legitimate public purpose could be deemed arbitrary and capricious. See City of Brookside Village v. Comeau, 633 S.W.2d 790 (Tex. 1982), cert. denied, 459 U.S. 1087 (1982).

With regard to requiring a landowner to bear the cost of cutting trees which are infested with forest pests, the constitutionality of the requirement would be dependent upon and implicit in a finding that no taking has occurred. The basic statutory framework for requiring certain landowners to bear the cost of abating forest pests already exists. See Nat. Res. Code §§152.022, 152.024. If the public need to protect forests outweighs the loss to the landowner of the value of his trees, he may be required to destroy the trees. Accordingly, if

the state expends state funds to destroy the trees, the state may recover this cost from the landowner. The Natural Resources Code, however, currently sets a fixed amount which constitutes a legal claim against a landowner for the cost of pest control undertaken by the Forest Service. See Nat. Res. Code §152.023.

## S U M M A R Y

The national forests and federally designated wilderness areas located within Texas are covered by the pest control provisions of chapter 152 of the Texas Natural Resources Code only to the extent that the authorized agency of the federal government expressly agrees to allow enforcement of Texas' forest pest control laws.

The state may constitutionally require private landowners to cut their trees or to pay the costs of the Texas Forest Service for doing so if the public need to control pests or deal with past infestations outweighs the loss to the landowner and if the means used by the service are not arbitrary and capricious. A determination of whether public need outweighs private loss depends upon the facts in each given case.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General